## COMMONWEALTH *vs.* JOHN F. WETHERBEE.

Within the meaning of the Gen. Sts. c. 88, § 1, a householder presumes to be an innholder without being licensed, who, without a license, is prepared, and holds himself out to the public as ready, to entertain travellers, strangers and transient guests, with their teams and carriages, after the manner usual with innholders; although he may sometimes make special bargains with his customers for the price and manner of their entertainment, may not keep his house open in the night, and may not keep the stable at which he puts the teams and carriages of those who stop with them at his house; and although part of the house is used as a grocery.

INDICTMENT on the Gen. Sts. *c.* 88, § 1, for presuming to be an innholder without being licensed. Trial in the superior court before *Brigham,* J., who allowed a bill of exceptions substantially as follows:

At the trial, there was evidence which tended to show that the defendant occupied a house in Woburn known as the Central House, near which was a post, with a swinging sign, inscribed "Central House," (but not with the defendant's name,) which had swung there for ten years; that formerly, (but precisely when, the bill of exceptions did not show,) the house, and a stable connected with it by intermediate buildings, were owned and occupied by Lazarus B. Norris; that Norris disposed of the stable to John Jones, (who had kept it as a livery stable ever since,) and then turned part of the first floor of the house into a grocery; and that the defendant afterwards came into occupation of the house, and had continued to occupy it for nearly two years before the finding of the indictment.

The chief of the police of Woburn testified that the house was "medium-sized;" that he had seen strangers go into it in the morning and be about it in the afternoon, also go into it at night and be about it in the morning, but never saw them eat or sleep or be otherwise entertained there, or pay money there, and did not know whether they were gratuitously entertained or not, nor whether they were friends of the defendant or of his boarders; that the defendant kept several boarders, about a dozen of whom the witness knew, and many others he did not know; that he had occasion to pass the house twenty times daily, on

duty, and was sometimes on the street as late as two o'clock in the morning, but " never saw any one go there after the close of business hours at night ; " that he heard the defendant, at a hearing before the county commissioners in July 1868, on an application for a license as an innholder, describe the place as the only hotel in Woburn, and say " that he had kept a hotel, and endeavored to keep a good one, and thought he had done so," and also say " that he had kept the house in Woburn for two years, and intended to keep a good house, with nice, clean beds, and give nice, wholesome food."

A state constable testified that one day in August 1868 there was a circus in Woburn, and the defendant told him, in the house, that he (the defendant) was entertaining the circus troop ; that he engaged supper with the defendant, and asked when he could have it, and the defendant replied that he could have it after the circus folks were through, and said that his supper for transient people and regular boarders was generally at six o'clock ; that he (the witness) did not stay for supper, and, being a , stranger in the town, did not know any of the people whom he saw in the house, and could not tell who of them were regular boarders and who were not.

The defendant then called Ahab Hart as a witness ; and Hart testified that he, with his family, boarded in the defendant's house ; that it was only a boarding-house, and during the greater part of the time covered by the indictment all the rooms were filled with boarders ; that the defendant entertained the circus troop, but not their horses ; and that he entertained them under a special contract, made several weeks beforehand with their agent, fixing the price and manner of their entertainment.

The defendant asked the judge to instruct the jury as follows, " as to the definition of an inn : "

" 1. To ' presume to be an innholder' is, to hold one's self out as an innholder able and ready to furnish wayfaring people and travellers with everything which they have occasion for ; that he will receive all travellers and sojourners who are willing to pay a price adequate to the sort of accommodation provided, and who come in a condition fit to be received.

" 2. A house for lodging strangers for a season, and furnishing hay and stable room for their horses, would not be an inn.

" 3. It is not an inn, if people come and are entertained in accordance with a previous contract; that is, if the price which is to be received for the entertainment is agreed upon before the parties are entertained.

" 4. If a contract for the entertainment be made between the landlord and guest, and this is the custom, it is a boarding-house or lodging-house.

" 5. To 'presume to be an innholder,' is, to pretend or assume to be a real innholder; and to pretend to have the power, facilities, accommodations and provisions of a lawful innholder is, to pretend to be 'furnished with suitable provisions and lodging for strangers and travellers, and with stable room, hay and provender for their horses and cattle.'

" 6. One who entertains strangers occasionally, although he may receive compensation for it, is not an innholder.

" 7. An innholder holds himself out to entertain all who come, whether by day or by night."

The judge declined to instruct the jury as requested, but did instruct them as follows: " A person presumes to be an innholder, who holds himself out to the public by advertisement, sign or practice, as one who is ready to furnish strangers and travellers, and their horses and cattle, with lodging and food, and in fact furnishes such food and lodging, when applied for. If food and lodging are furnished by such a person to the horses and cattle of strangers and travellers, at a stable kept by another person, he would be still an innholder, notwithstanding such arrangement. The providing of lodging and food to a circus company, consisting of persons who were not residents of Woburn, and were travelling with their horses from place to place and exhibiting a circus, for the period of two days, would be an entertainment of travellers and strangers according to the manner of innholders, notwithstanding the same was done under a special contract for the price of the same, made before such circus company were entertained."

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*L. W. Osgood,* for the defendant, argued " that to presume to be an innholder is, to falsely assume to be a lawful innholder, the statute and not merely the common law innholder, or such an innholder the being which, being licensed, is no offence, but the being which, not being licensed, is an offence;" and cited *Commonwealth* v. *Wolcutt,* 10 Cush. 61; *Thompson* v. *Lacy,* 3 B. & Ald. 283; *Dickerson* v. *Rogers,* 4 Humph. 182; *Curtis* v. *Ohio,* 5 Ohio, 324; *Overseers of the Poor* v. *Warner,.* 3 Hill, 150; *Parkhurst* v. *Foster,* 1 Carth. 417; *Commonwealth* v. *Pearson,* 3 Met. 450; *Pitt* v. *Laming,* 4 Camp. 77; *Rex* v. *Ivens,* 7 C. & P. 217, 220.

*J. C. Davis,* Assistant Attorney General, ( *C. Allen,* Attorney General, with him,) for the Commonwealth.

HOAR, J. ·The defendant's prayers for instructions were generally correct, being indeed, as his counsel states, made in the very language of adjudged cases. But the court were under no obligation to adopt the exact language of these prayers; and the instructions given seem to us to have been accurate, and to have comprised all that the evidence in the case required, including, in substance, all of the propositions which were sound, and which the evidence tended to support.

The principal error in the defence seems to have been, that a man could not be convicted of " presuming to be an innholder" under the statute, unless he was proved to have done all which the statute requires an innkeeper to do. But the statute requires an innkeeper to be licensed; and the result of this reasoning would be, that he could not be convicted unless he was licensed, as he certainly could not be if he was. A man may be an innkeeper, although he keeps an inn imperfectly, or combines that employment with others; if he is prepared and holds himself out to the public as ready to entertain travellers, strangers and transient guests, with their teams and carriages, after the manner usual with innkeepers, although he may sometimes make special bargains with his customers, may not keep his house open in the night, and may not keep the stable at which he puts up the horses of those who stop with them at his house. There was evidence sufficient for the jury to pass upon to. sup-

port the indictment ; and the fact that the defendant, in the case of the circus company, made a special bargain with a large company of guests who came as travellers at one time, would not prevent that case, with all its circumstances, from being proper for their consideration.                    *Exceptions overruled.*