METZLER, Respondent, v. THE TERMINAL HOTEL COMPANY, Appellant.

St. Louis Court of Appeals, January 26, 1909.

INNKEEPER: Bailment: Liability of Innkeeper. One who kept a hotel for the purpose of lodging guests only, but convenient to a restaurant, run by another, to all appearances, appurtenant to the hotel, was an "innkeeper" and liable as such to a guest for failure to return baggage committed to his care by a guest.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds*, Judge.

AFFIRMED.

*Andrew M. Sullivan* for appellant.

The defendant was not an innkeeper, upon whom as such was imposed by considerations of public policy and not by contract between the parties, the liability of insurer, for all losses to a guest, not resulting from the act of God, the public enemy, or the negligence of the guest himself. And first as to the liability of an innkeeper, its limitations and the policy of the law in defining the term. Batterson v. Vogel, 10 Mo. App. 235. (Liability in Missouri further limited, showing policy of State towards restricting the common law liability. R. S. 1899, secs. 7578, 7579.) Innkeeper's

liability not based upon contract (or bailment) express or implied, but founded upon considerations of public policy for the protection of travelers. Johnson v. Richardson, 17 Ill. 302; Hallet v. Smith, 33 N. Y. 571; Stanley v. Bircher, 78 Mo. 245; Mason v. Thompson, 9 Pick. (Mass.) 280; Beale on Innkeepers and Hotels, secs. 111, 112, 182. "It had its origin at an early period when highways were infested with thieves and highwaymen, with whom the innkeeper frequently colluded (no such condition now), and was the only means under such conditions by which protection could be afforded to travelers who had no means of knowing the neighborhood or the character of those whom they might meet at the inn." Holder v. Soulsby, 8 Q. B. N. S. 254; Beale on Innkeepers and Hotels, sec. 3. "While the ancient rule is still enforced against the classes of persons to whom it was originally applied the tendency of modern legislation and judicial opinion has been to limit it strictly to them." Blum v. Car Co., 1 Flipp. (U. S.) 500. Instances: The innkeeper is liable as insurer, only to persons who are his guests. Bunn v. Johnson, 77 Mo. App. 596. Transients, only, may be guests. Beal v. Posey, 72 Ala. 323; Taylor v. Monnot, 4 Duer. (N. Y.) 116; Meachem v. Galloway, 102 Tenn. 415; Curtis v. Murphy, 63 Wis. 4. And to establish the relation of host and guest the transient must visit the inn or hotel for the purpose of availing himself of the entertainment offered, that is, to obtain refreshment or lodging, or both. Straus v. Hotel, 12 Q. B. D. 27, 48 J. P. 69, 53 L. J. Q. B. 25; Beale on Innkeepers, sec. 131. A person entertained by the innkeeper as his friend, is not a "guest." 22 Cyc. 1077. Nor one who goes to the hotel merely to attend a banquet. Carter v. Hobbs, 12 Mich. 52; Amey v. Winchester, 68 N. H. 447; 63 Am. St. 614, 39 L. R. A. 760.

*Stern & Haberman* for respondent.

Appellant is an innkeeper and liable as such. Respondent sued appellant for the value of a suit case and contents placed in appellant's keeping while respondent was its guest. Respondent reclaimed his suit case during the time he was still a guest and the same could not be found. Appellant offered no explanation as to the reason why respondent's suit case was not returned to him. Horton v. Hotel Co., 114 Mo. App. 357; Bunn v. Johnson, 77 Mo. App. 599; 16 A. & Eng. Ency. of Law, 808; Holstein v. Phillips, 59 S. E. 1037; Johnson v. Chadbourne, 89 Minn. 310, 99 Am. St. Rep. 571; Nelson v. Johnson, 116 N. W. 828.

GOODE, J.—This plaintiff became a transient guest at the Terminal Hotel in the city of St. Louis, an establishment conducted by defendant. He registered and was assigned a room and afterwards checked his valise at the office. On presenting the check for the return of the valise, it could not be found and never was. This action was instituted for a conversion of the property and to recover the value of it and its contents from defendant in the capacity of innkeeper. The only defense invoked is that defendant was not an innkeeper or subject to the extraordinary liability of one. The defendant furnished in its establishment lodging to transient guests for a fixed schedule of rates, but no meals. In the same building and on the second floor, is a dining room or restaurant, conducted by another proprietor, and communicating with defendant's part of the building through a large archway. This dining room is a convenient place for defendant's guests to take meals. Plaintiff ate his dinner there on the evening he arrived and his breakfast the next morning, not knowing whether defendant furnished the meals or some one else. He said he walked from the hotel office into the dining room through the archway. Both establish-

ments are part of the large building known as the Union Station, which extends across two blocks. Because defendant furnished no meals to guests and does not conduct the contiguous restaurant, it is said not to have kept an inn in the ancient sense of the word, namely, a house where both food and lodging are furnished to travelers. [Cromwell v. Stevens, 2 Daily (N. Y.) 16.] Counsel for defendant says the policy of the courts is not to extend the extraordinary common law liability of innkeepers to persons not technically such, like the proprietors of boarding houses and restaurants, or in favor of constant as well as transient guests of a hotel; and many cases supporting these restrictions of liability are collected in his brief. We cite the following: Blum v. Pullman Pal. Car Co., 1 Flipp. (U. S.) 500; Beal v. Posey, 72 Ala. 323; Straus v. County Hotel, etc., Co., 12 Q. B. D. 27; Carter v. Hobbs, 12 Mich. 52; Walling v. Potter, 35 Conn. 183; Curtis v. Murphy, 63 Wis. 4; Chamberlain v. Masterson, 26 Ala. 371. Counsel argues the liability of innkeepers was established in centuries when travel in England was attended with great danger to life and property from highwaymen, and when the hosts of wayside inns often colluded with these robbers to despoil guests; that as the conditions of travel have changed the reason of the old law has vanished and, therefore, it ought to be enforced reluctantly and confined to the case of innkeepers in the original meaning of the term. This argument proceeds on only part of the policy underlying the liability of innkeepers and the policy is more fully set forth in the opinion in Hulett v. Swift, 33 N. Y. 571, 99 Am. St. R. 578.

"This custom, like that in the kindred case of the common carrier, had its origin in considerations of public policy. It was essential in the interest of the realm that every facility should be furnished for secure and convenient intercourse between different portions of the kingdom. The safeguards of which the law gave

assurance to the wayfarer, were akin to those which invested each English home with the legal security of a castle. The traveler was peculiarly exposed to depredation and fraud; he was compelled to repose confidence in a host, who was subject to constant temptation, and favored with peculiar opportunities, if he chose to betray his trust. The innkeeper was at liberty to fix his own compensation, and enforce summary payment; his lien, then, as now, fastened upon the goods of his guest from the time they came to his custody. The care of the property was usually committed to servants, over whom the guest had no control and who had no interest in its preservation, unless their employer was held responsible for its safety. In case of depredation by collusion, or of injury or destruction, by neglect, the stranger would, of necessity, be at every possible disadvantage; he would be without the means either of proving guilt or of detecting it. The witnesses to whom he must resort for information, if not accessories to the injury, would ordinarily be in the interest of the innkeeper. The sufferer would be deprived, by the very wrong of which he complained, of the means of remaining to ascertain and enforce his rights, and redress would be wellnigh hopeless, but for the rule of law casting the loss on the party intrusted with the custody of the property, and paid for keeping it safely.

"The considerations of public policy in which the rule had its origin forbid any relaxation of its rigor. The number of travelers was few, when this custom was established for their protection. The growth of commerce and increased facilities of communication have so multiplied the class for whose security it was designed, that its abrogation would be the removal of a safeguard against fraud, in which almost every citizen has an immediate interest. The rule is in the highest degree remedial. No public interest would be promoted by changing the legal effect of the implied contract be-

tween the host and the guest and relieving the former from his common-law liability."

If that judicial exposition of the matter is sound, the peculiar responsibility of innkeepers has been imposed for various considerations, including their special privileges in respect of fixing their rates, enforcing summary payment from guests and enjoying the security of a lien on the goods of guests. Though in the olden day English inns perhaps always furnished both food and lodging to wayfarers, and therefore an innkeeper came to be designated as a person furnishing entertainment of both kinds, the reason why he was held to an unusual liability for the goods of the guests had nothing to do with the furnishing of food, and the fact that many modern hotels do not furnish it, is no argument in principle against imposing the same liability on their proprietors, but we concede it is an argument that such proprietors are not innkeepers. Suffice to say as far as public policy is concerned, every sound reason for enforcing the full responsibility of innkeepers obtains with as much strength against the keepers of hotels who accept transient guests as lodgers only, as against those who entertain with both lodging and food. And if this responsibility ought to be remitted in some measure, the duty is legislative, not judicial. To all appearances defendant's establishment was a fully equipped inn or hotel where both lodging and meals could be procured by a guest. It took no measures to advise guests to the contrary and no doubt derived patronage from the fact that a restaurant was at hand and seemingly appurtenant. Persons stopping in the hotel would have the right to presume defendant was acting as an innkeeper. This ruling we think, is in accord with decisions which have dealt with the question. [Johnson v. Chadbourne, 89 Minn. 310; Nelson v. Johnson, 116 N. W. 828; Holstein v. Phillips, 59 N. E. (N. C.) 1037; Bullock v. Adair, 63 Ill. App. 13; Krohn v. Sweeney, 2 Daily (N. Y.) 200; Bunn v. Johnson, 77 N. Y. 599; Common-

wealth v. Weatherbee, 101 Mass. 214.]   It is commonly understood a place of transient resort like defendant's is a hotel or inn, and our statutes touching inns and innkeepers point to the like legislative opinion.   The innkeepers' lien is extended by article 3, chapter 47 to "hotels, inns and boarding-house keepers."   Places like defendant's are not boarding-houses, and unless they are inns, are entitled to no lien on the baggage and valuables of guests.   The purpose of the various statutes touching inns would be defeated in a measure if we were to hold establishments which furnished lodging but not food to all transient guests who apply for it, could have no lien.   Section 7508 says an iron safe shall be kept by every innkeeper in his inn for the custody of jewelry and precious articles, and that such articles shall be left for deposit in the safe if their owners would hold the proprietor for a loss of them.   Section 7580 in the chapter (116) relating to innkeepers, says every person who shall obtain board or lodging in a hotel or boarding-house by means of a trick, etc., shall be guilty of a misdemeanor.   The words of said section imply that an establishment which furnishes board or lodging, as well as one furnishing both, is a hotel. Yielding to defendant's contention would render this section inapplicable to hotels where only lodging is furnished to transients; a manifestly absurd result, because no reason can be thought of why the Legislature should require the precaution in a hotel which furnishes meals and lodging, and not in one which furnishes lodging only.   The conditions of modern travel and the customs of the people have insensibly altered the significance of the words "inn" and "innkeeper," and, indeed, those words have been nearly displaced in common use by the term "hotel," which means a place where transient guests are admitted to lodge, as well as one where they are fed and lodged.   "Hotel" and "inn" are now used interchangeably in statutes and decisions, and until the legislature deems it wise to

relieve hotel proprietors of the common-law liability of innkeepers, they should be held to it by the courts.

The judgment is affirmed. All concur.