TAMERLANE REALTY TRUST & another[1] *vs.* BOARD OF APPEALS
OF PROVINCETOWN.

Barnstable.  May 16, 1986. — January 30, 1987.

Present: BROWN, PERRETTA, & FINE, JJ.

*Zoning,* Special permit, Judicial review, Nonconforming use or structure.
*Words,* "Innkeeper."

In a proceeding brought by the operators of a restaurant with a few sleeping
   accommodations seeking judicial review of a municipal zoning board's
   decision refusing the establishment a special permit to alter a preexisting
   nonconforming use, the trial judge's characterization of the nature of
   the establishment's nonconforming use as an inn with dining facilities
   was clearly erroneous, where, even though the establishment held an
   annually renewable innkeeper's license, the rooms in question were used
   only to accommodate restaurant workers during the summer months and
   had not been available for transient guests for many years, and where
   the dining area, which formerly could accommodate only guests of the
   inn, had been expanded to seat ninety persons. [454-455]
Where a local zoning board refused a special permit to alter a preexisting
   nonconforming use of an establishment, concluding that it was used as
   a restaurant and that as such its expansion would have a detrimental
   effect on the neighborhood; where on appeal from the Superior Court
   judgment annulling the board's decision this court held that the judge's
   characterization of the nature of the nonconforming use as an inn with
   dining facilities was clearly erroneous; and where characterization of
   the use as a restaurant would not necessarily preclude issuance of the
   special permit sought for the establishment, the case was remanded to
   the Superior Court for determination by the judge whether, in the cir-
   cumstances, the special permit was appropriate under the applicable
   zoning by-law. [455]

CIVIL ACTION commenced in the Superior Court Department
on June 8, 1984.
The case was heard by *Augustus F. Wagner, Jr.,* J.

[1] Tamerlane Corporation.

*Richard J. Fallon* for the defendant.

*Evan T. Lawson* for the plaintiffs.

BROWN, J. The board of appeals of Provincetown (board) appeals from a judgment of the Superior Court which annulled its decision refusing the Red Inn a special permit to alter a preexisting nonconforming use.

On January 12, 1984, the Red Inn, owned and operated by R & J Abare Realty Trust and Red Inn Corp., now succeeded by Tamerlane Realty Trust and Tamerlane Corporation (we shall refer to these collectively as Red Inn), applied to the board for a special permit to alter a preexisting nonconforming use and structure pursuant to § 2110 of the Provincetown zoning by-law. Section 2110 authorizes preexisting nonconforming structures or uses to be "extended, altered, or changed in use" if the board finds that "such extension, alteration, or change will not be substantially more detrimental to the neighborhood than the existing nonconforming use."

The Red Inn, located at 15 Commercial Street, is in a residential zone in Provincetown. The relevant zoning by-law was enacted in 1978. Although the precise nature and purpose for which the premises were used are contested matters, we think it is clear that the premises enjoy the status of a preexisting nonconforming use.[2] G. L. c. 40A, § 6. The present owners bought the Red Inn in 1971. That inn is in part a one-story building and in part a two-story building. The first floor is devoted to restaurant use. There was testimony that in 1915 the Red Inn provided sleeping accommodations to transients. Since 1971, the Red Inn has used the seven to eight rooms on the second floor to accommodate those who worked in the restaurant during the summer months either for room and board or for a reduced wage. Since 1981, no one other than restaurant workers has resided there. From 1971 to 1985, inclusive, the Red Inn has held an annually renewable innkeeper's license.

---

[2] As of 1978, there was nonconformity in use and structure because (1) both a restaurant and an establishment with fewer than twenty guest units which serves alcoholic beverages are not allowed uses in a Class W residential zone; (2) the structure obtrudes into the harbor setback; and (3) the structure is too close to the front line.

However, at least since 1981, the Red Inn has declined requests from the general public for sleeping accommodations.

The plan submitted by the Red Inn was to (1) renovate and consolidate the existing rooms into six guest units for overnight accommodations, (2) enlarge the kitchen, (3) add on new decks, (4) install a septic system in conformity with Title V of the State Sanitary Code (310 Code Mass. Regs. § 15.00 [1978]), and (5) remove a small outbuilding in order to give access to the loading dock. The Red Inn's total structural volume would increase by approximately thirty to forty percent, while the total lot coverage would increase by only four percent.

The board held a series of hearings on the Red Inn's application between the dates of March 1, 1984, and April 25, 1984. During the course of these meetings, one abutter made an appearance to contest the proposal.

In response to the board's expressed concerns about parking congestion, the Red Inn indicated that it would obtain the rights to six additional parking spaces immediately across Commercial Street to be used expressly for parking for overnight guests and that a valet parking system would be provided. A trustee of the Red Inn testified that, as he is also a trustee who has a beneficial interest in the proposed parking area, a written easement could easily be secured.

Noting that a special permit can be granted if the social, economic, or other benefits outweigh any adverse effects,[3] and if the alteration, extension, or change will not be more detrimental to the neighborhood than the existing nonconforming use, the board denied the Red Inn's application, citing parking as the principal reason, as well as congestion and environmental degradation. The board acccordingly concluded that "the expansion will have an impact that is detrimental and cannot in any way serve to benefit the neighborhood."

In its decision denying the application, the board, acknowledging that the Red Inn was a prior nonconforming use, concluded that it should be treated as a restaurant. The board based

---

[3] This language reflects § 4330 of the Provincetown by-law, which governs applications for special permits to change conforming structures.

this conclusion on the evidence that rooms have not been available for transients for many years and that the dining area which formerly could accommodate only transient inn guests had been expanded over time to seat ninety persons. The board dismissed Red Inn's maintenance of an innkeeper's license as having been merely a means of avoiding the necessity of obtaining a variance to operate the restaurant.

The trial judge, after a hearing de novo (G. L. c. 40A, § 17) determined, contrary to the conclusion of the board, that the nonconforming use was as an inn with dining facilities[4] and that the actual use of the subject area, as well as the more restrictive nature of the abutting Zone G, is commercial in nature, consisting of inns, restaurants, and hotels with numerous guest units available to the general public. The trial judge further determined that the proposed renovations of six additional guest units would not substantially alter the Red Inn's existing use and that the structural changes would not be substantially more detrimental to the neighborhood. Contrary to the board's conclusion, the trial judge found that the proposed alteration of the loading dock and provision of the six new parking spaces actually would be beneficial, tending to reduce traffic congestion.[5] Based on his determination that the board could not properly have found that the alterations would be substantially more detrimental than the existing use, the judge concluded that the board's decision was based on legally untenable grounds. He annulled the decision as unreasonable, arbitrary, and capricious and remanded the matter for entry of a decision granting the special permit subject to the conditions that the board may require (a) the proposed deck be built in accordance with the Provincetown zoning by-law, (b) a recorded easement for the six guest parking spaces across the street and (c) a revision of an artist's rendering of the building plans.

This court's duty is to accept the trial judge's findings of fact unless they are clearly erroneous. *DiGiovanni* v. *Board*

---

[4] The trial judge did not specifically find that this was the use in 1978, i.e., when the zoning by-law took effect.

[5] The judge also found that the new septic system would benefit the neighborhood.

*of Appeals of Rockport,* 19 Mass. App. Ct. 339, 343 (1985). See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). A finding of fact will not be deemed clearly erroneous unless the appellate court on the entire evidence is left with the "definite and firm conviction that a mistake has been committed." *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 160-161 (1977). We conclude that the trial judge's characterization of the nature of the nonconforming use exempting the Red Inn from the zoning by-law as an inn with dining facilities is clearly erroneous. See *Capitol Bank & Trust Co.* v. *Richman,* 19 Mass. App. Ct. 515, 519 (1985).

Persons may be deemed innkeepers if they are "prepared and hold . . . [themselves]) out to the public as ready to entertain travelers, strangers and transient guests." *Commonwealth* v. *Wetherbee,* 101 Mass. 214, 217 (1869). The licensing statute for innholders, G. L. c. 140, § 5, provides that every innholder shall "at all times be provided with suitable food for strangers and travelers" and shall have "upon his premises suitable rooms, with beds and bedding, for the lodging of his guests." To qualify as a guest of an inn, one should be a transient. *Selvetti* v. *Building Inspector of Revere,* 353 Mass. 645, 647 (1968). The burden was upon the Red Inn as the party seeking zoning relief to produce evidence at the hearing in the Superior Court that the statutory prerequisites had been met and that zoning relief was justified. *Martin* v. *Board of Appeals of Yarmouth,* 20 Mass. App. Ct. 972 (1985). The existence of a nonconforming use is determined as of the date of the "first publication of notice of the public hearing on [the] by-law." G. L. c. 40A, § 6, inserted by St. 1975, c. 808, § 3. See *Morin* v. *Board of Appeals of Leominster,* 352 Mass. 620, 623 (1967).

The record in the Superior Court does not support the finding that prior to and during 1978 the prevailing use of the premises was that of an inn. There was no evidence that the Red Inn had suitable accommodations for strangers, travelers, or transient guests. The fact that some of the employees who were lodged at the premises were not year-round employees would not qualify them as transient travelers. Nor does an innholder's

license for the relevant years establish its actual use as an inn. Rather, it tends to support a finding of intended rather than actual use and such intentions are not protected. Cf. *Spector* v. *Building Inspector of Milton,* 250 Mass. 63 (1924) (application for permit prior to enactment of the zoning by-law gave no vested rights); *Brett* v. *Building Commnr. of Brookline,* 250 Mass. 73 (1924) (no protected use against change in zoning by-law despite issuance of permit and beginning of work); *Everett* v. *Capitol Motor Transp. Co.,* 330 Mass. 417 (1953) (use as freight terminal which was intended but not commenced before adoption of restrictive ordinances did not establish nonconforming use); *Building Inspector of Malden* v. *Werlin Realty, Inc.,* 349 Mass. 623 (1965) (no prior nonconforming use where owner bought building with intended use).

The nature of the use prevailing when the zoning by-law took effect is clearly material to the outcome of this case, as it is a key element in the judicial test for determining whether a special permit should be granted in these circumstances. In light of the judge's findings that the actual nature of the subject area is commercial and that some of the alterations would be beneficial, we note that a characterization by the trial judge of the preexisting use as a restaurant would not necessarily mandate a conclusion that the Red Inn's proposal is substantially more detrimental to the neighborhood than the nonconforming use.

The case is remanded to the Superior Court for determination by the judge whether a special permit is appropriate under the criteria of § 2110 of the Provincetown zoning by-law. The judge may take additional evidence, if such is deemed necessary.

*So ordered.*