Curtin, J.
This is a motor vehicle tort action to recover for personal injuries allegedly sustained by the plaintiff-pedestrian in consequence of the defendant’s negligence. After trial, judgment was entered for the defendant, and the plaintiff filed this Dist/Mun. Cts. RADA, Rule 8C appeal. At issue are the propriety of the trial court’s admission into evidence of a statement of the deceased defendant and the court’s finding of fact concerning such statement.
The incident in question occurred on July 23, 1993 on Washington Street in Roslindale. Because the sidewalks were under repair, plaintiff Mark Johnson was walking in the street, on the left hand side, facing oncoming traffic. He had a clear view of approaching vehicles for 25-50 feet, and saw the defendant’s car proceeding toward him. The plaintiff testified that as the defendant’s vehicle drove past him, his right hand and forearm were struck by the vehicle’s right passenger side mirror.
The defendant’s wife, Ceslava Petruitis (“Mrs. Petruitis”), was seated only inches away from the mirror in the front passenger seat, and had her window open. She testified that the plaintiff was not struck by the car, but instead walked past the vehicle. Mrs. Petruitis further testified that as the plaintiff passed by the rear portion of the car, she heard a noise and asked her husband what had happened. The defendant replied: “He hit our car. He struck our car.” The defendant stopped, and both he and his wife spoke to the plaintiff. Mrs. Petruitis testified that the plaintiff had no visible injuries and declined at the scene to seek medical treatment.
At the time of trial, the defendant was deceased.[1] Over the plaintiff’s objection, the court admitted into evidence a signed, typewritten statement which the defendant had given to his insurance agent, Baltic Insurance Company (“Baltic”), on July 27, 1993, four days after the alleged accident.[2] Prior to admitting the state *18 ment, the court heard testimony from Gryte Kuncaitis (“Ms. Kuncaitis”), the Baltic employee who translated and typed the statement after interviewing the defendant and his wife.[3] Ms. Kuncaitis, who is fluent in English and Lithuanian, read the statement back to the defendant in both languages before it was signed and notarized. It was Baltic’s usual procedure to take such statements from its clients for submission to their insurance carriers. Mrs. Kuncaitis also testified as to the substance of the interview she had with the defendant about the incident, and was vigorously cross-examined by plaintiffs counsel.
1. Pursuant to G.L.C. 233, §65, a declaration of a deceased person is admissible in a civil action, despite its hearsay nature, if the court finds that the statement was made in good faith and upon the personal knowledge of the declarant. Generally, Section 65 is liberally construed to permit the admission of a decedent’s hearsay statements “to mitigate the hardship... often resulting from the loss of evidence by reason of death.” Berwin v. Levenson, 311 Mass. 239, 242 (1942). Contrary to the plaintiff’s initial contention on this appeal, a written statement by the trial court of its preliminary findings of good faith and personal knowledge was not a prerequisite to the admission of the deceased defendant’s statement. While a court’s articulation of its findings is the better practice, it is well established that the admission of the statement imports the necessary preliminary findings. Mitchell v. Hastings & Koch Enterp., Inc., 38 Mass. App. Ct. 271, 275, rev. den. 420 Mass. 102 (1995). Cf. Old Colony Trust Co. v. Shaw, 342 Mass. 212, 216 (1964).
Moreover, there is ample evidence in the record to support the trial judge’s admission of the written statement of the deceased defendant regarding the accident at issue. The statement was made by the defendant on July 27,1933, only four days after the incident. The decedent’s statement was also corroborated by Mrs. Petruitis’ trial testimony. Finally, Ms. Kuncaitis’ testimony as to the circumstances surrounding the recording of the statement constituted evidence warranting the court’s implied findings that the statement was made in good faith and with the personal knowledge of the defendant.
Given Ms. Kuncaitis’ undisputed testimony, there is no merit in the plaintiff’s contention that the defendant’s statement was made to “perpetuate his own testimony” under G.L.c. 233, §§46, 47, and was thus inadmissible because the plaintiff was not given statutory notice prior to the defendant’s making of his statement which would have afforded the plaintiff an opportunity to cross-examine the defendant. This is not a case where a defendant, in anticipation of both planned litigation and his own imminent death prior to trial, prepared a statement with the assistance of counsel for the express purpose of having such statement eventually introduced into evidence. See. e.g., Anselmo v. Reback, 400 Mass. 865, 866-867 (1987). The defendant’s statement was instead given in the course of notifying his insurance agent of an alleged accident and in compliance with the agent’s customary procedure to take such statements. The statement was made only days after the incident in question, prior to the commencement or expectation of suit, and at a time when the defendant was neither ill, nor had any reason to anticipate his own death eighteen months later.
2. Once the defendant’s statement was properly admitted into evidence, the meaning, weight and credibility of such statement were matters for the trial court’s determination. See generally, Starr v. Fordham, 420 Mass. 178, 186 (1995); First Pa. Mortg. Trust v. Dorchester Sav. Bank, 395 Mass. 614, 621 and n. 11 (1985). The plaintiff contends on this appeal that there was no evidence to support the trial *19 court’s findings of fact with respect to the statement.[4] Specifically, the plaintiff argues that file evidence adduced at trial precluded the court’s finding that although the defendant stated that he had observed the plaintiff punch his vehicle through the rear view mirror, “it was wholly likely that [the defendant] was speaking of an observation made of his car’s right rear through the right side mirror.”
The plaintiff failed, however, to file requests for rulings of law and thus forfeited any right to appellate review of the legal sufficiency of the evidence to support the court’s findings. Mass. R Civ. R. Rule 64A(b); Worcester County Nat’l Bank v. Brogna, 386 Mass. 1002 (1982); Forbes v. Gordon Gerber, Inc., 298 Mass. 91, 94-95 (1937). In the absence of appropriate requests, the plaintiff could only prevail on this appeal by persuading us to the point of a firm conviction that the judge’s findings of fact were “clearly erroneous.” Foster v. Bartolomeo, 31 Mass. App. Ct. 592, 593 (1991). The judge took a view by sitting in the automobile, and there was evidence that the only mirror affording a view of the right rear panel of the defendant’s car was the right side mirror. In consideration of this evidence and the record in its entirety, we do not conclude that the court’s findings were in error. Tamerlane Realty Trust v. Board of Appeals of Provincetown, 23 Mass. App. Ct. 450, 453-454 (1987); Capitol Bank & Trust Co. v. Richman, 19 Mass. App. Ct. 515, 519 (1985).
There being no error, the trial court’s judgment for the defendant is affirmed. The plaintiff’s appeal is dismissed.
So ordered.

 The defendant was diagnosed with cancer a year after the incident in question. He died on February 13,1995, nine months before trial commenced.

 The statement read, in pertinent part: “On the twenty-third of July, 17, 1:30 P.M., I was traveling on Washington St. near Forest Hills in Roslindale. There was a construction crew with a cement truck and police observer. The road was narrowed to one lane traffic. A pedestrian was walking in direction of oncoming traffic. As he passed my vehicle, he purposely punched my vehicle in the rear quarter. I watched through my rear view mirror as this happened. We pulled up slightly, and got out of the vehicle, because I saw the pedestrian turn and walk back towards my vehicle...”

 The defendant and his wife emigrated from Lithuania in 1949. While the defendant could speak and read English, his primary language was Lithuanian.

 As to the deceased defendant’s July 27,1993 statement, the trial court found: “Both in an immediate exclamation to his wife and in a written statement to his insurance agent four days later, defendant stated that the plaintiff had punched the right rear quarter of defendant’s car. Defendant said he observed this through his rear view mirror.
“Having sat, at the request of plaintiff’s counsel, in the driver’s seat of defendant’s car, I find it impossible for defendant to have seen the vehicle’s right rear quarter through the internal rear view mirror. The right rear is readily observed, however, through the right passenger mirror that provides a rear view in addition to that provided by what is normally referred to as the rear view mirror.”
“Both Mr. and Mrs. Petruitis were born in Lithuania and continued to speak Lithuanian after coming to the U.S. about 1949.1 find it wholly likely that he was speaking of an observation made of his car’s right rear through the right side mirror.
“While there were inconsistencies concerning plaintiff’s employment history, what this case comes down to, having considered all of the evidence, is the ultimate finding that the plaintiff failed to meet his burden of establishing by a preponderance of the evidence that the contact that occurred between plaintiff’s right forearm and the right rear quarter of defendant’s vehicle was due more to negligence on the part of the defendant than contributory negligence on the part of the plaintiff.”