F. A. BARTLETT TREE EXPERT COMPANY *vs.* CLYDE C. HARTNEY & others.

Suffolk.    October 11, 1940. — February 26, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Damages*, For breach of contract.

In a proceeding against a former employee of the plaintiff for breach by the defendant of his contract of employment by obtaining and executing orders for work on trees from the plaintiff's customers, where it appeared that the amount of the plaintiff's overhead expense was not materially affected by the defendant's doing the work, damages should be assessed in the amount remaining after deducting from the prices received for the work by the defendant the actual amount which it would have cost the plaintiff to do it, but without a deduction of any part of the plaintiff's overhead.

BILL IN EQUITY, filed in the Superior Court on March 5, 1938.

The case was heard by *F. T. Hammond*, J.  The defendants Hartney and Amalia appealed from the final decree.

*P. A. Hendrick & R. T. Hamlett*, for the defendants Hartney and another, submitted a brief.

*S. Abrams*, (*H. J. Field* with him,) for the plaintiff.

DOLAN, J.  This suit in equity comes before us on the appeals of the defendants Hartney and Amalia from the final decree.  After hearing, the judge filed a "Statement of Findings, Rulings and Order for [interlocutory] Decree."

Material findings of the judge may be summarized as follows. The plaintiff is a corporation engaged in the business of tree surgery and "allied undertakings." It pursues that business throughout the United States. The defendant Hartney had been in the plaintiff's employ for many years. During the year 1937 he was "area manager" for the southern area, which included the counties of Norfolk, Plymouth, Bristol and Barnstable in this Commonwealth, and parts of Rhode Island and Connecticut. The defendant Amalia began to work for the plaintiff in 1931 and in January, 1938, was appointed "acting area manager" for the "northern area" comprised of "Essex County and parts of Middlesex and Suffolk Counties in Massachusetts and portions of New Hampshire and Maine. He was in charge of the plaintiff's branch office in Manchester, Massachusetts."

In the latter part of 1937 differences arose between Hartney and the plaintiff, and in January, 1938, he formed the intention of leaving the plaintiff's employ and setting up for himself if the matter in dispute between him and the plaintiff's vice-president could not be adjusted. During the latter part of January Hartney talked with Amalia about going into business together. On February 14, 1938, they definitely decided to leave the plaintiff's employ and go into business together, and on February 26, 1938, they resigned and formed a corporation under the name of Hartney & Amalia, Inc., which immediately entered into the business of tree surgery throughout New England. Substantially all of the stock of this corporation is owned by Hartney and Amalia, hereinafter referred to as the defendants. Prior to resigning the defendants urged several of the plaintiff's employees to join them in the new venture. After the new corporation was formed three of the plaintiff's more valuable employees accepted positions with that corporation.

The judge found many other subsidiary facts which need not be recited, since the only question presented for determination by this court concerns the correctness of the assessment of damages in the final decree. The judge concluded that the defendants had committed breaches of promises implied in their contracts of employment with the plaintiff

"in that (1) they failed to make reasonable efforts to obtain orders for the plaintiff in 1938 [January and February] ... ; (2) they engaged . . . employees of the plaintiff, to work for them in a competing business; and (3) they failed to impart to the plaintiff important information which it was their duty to give to it." The judge ruled that "damages should be assessed (1) against . . . Hartney for the net profits which the plaintiff would have made from executing the orders obtained by him for the new company from the plaintiff's customers during February, March and April, 1938," and should be assessed in the same manner against Amalia. The judge then ordered that an interlocutory decree be entered referring the case to a master to ascertain the damages "as above stated." Accordingly an interlocutory decree was entered appointing a master for that purpose.

Material findings of the master follow: During February, March and April Hartney secured from former customers of the plaintiff business in the gross amount of $5,650.25. From this sum the master deducted costs of material, rent of equipment, unemployment and old age assistance contributions, workmen's compensation costs which the plaintiff would have had to pay in connection with the orders secured by Hartney and the salary which it would have had to pay Hartney during the period involved had he remained in its employ and secured those orders for it. This left a balance of $2,773.92. The master found that this sum would have been the net profit the plaintiff would have made on these orders "if, as a matter of law, as contended by the plaintiff, net profit in this case means, or should mean, the sum left after deducting from the gross amount of said orders the actual cost of the performance of the work called for by said orders without considering the overhead and other expenses, including operative cost, of the maintenance of the plaintiff's said divisional office in said Cambridge, Massachusetts, or those of the branch office thereof in said Manchester, Massachusetts, or those of its administrative or main office in said Stamford, Connecticut, or those of any of its other divisional or branch offices. The loss of work called for by the orders obtained by the defendant Hartney,

as aforesaid, did not materially decrease the overhead and other expenses, including operative cost, of the maintenance of said offices, or any of them, and had the plaintiff performed said work said overhead and other expenses, including operative cost, of the maintenance of said offices, or any of them, would not have been materially increased." The entire "gross value" of all work sold by the plaintiff in its seven divisions (all of which are in the United States) for the year 1937 was $876,089.36. The entire cost to the plaintiff, including overhead, of doing this work was $845,350.80. The net profit from this work was $30,738.56 or approximately three and five tenths per cent. At this rate the plaintiff would have made a net profit of $197.76 on orders obtained by Hartney from the plaintiff's customers during the period in question, if, as matter of law, as contended by Hartney in the first instance "net profit in this case means, or should mean, the same proportion of said gross sum of $5,650.25 that said sum of $30,738.56 bears to said gross sum of $876,089.36, using the net profit from work sold in the year 1937 determined as hereinbefore in this paragraph set forth as the fair and reasonable yardstick with which to measure the net profit the plaintiff would have made from said orders for work obtained by the defendant Hartney during February, March and April 1938." The gross value of the work sold by the plaintiff in its New England division in 1937 was $186,210.14. The cost, including overhead, was $159,939.07, and the net profit $26,271.07, or approximately fourteen and eleven hundredths per cent. That per cent of the gross amount of the orders in question that were executed by Hartney would be $797.25, which is the net profit the plaintiff would have made on those orders "if, as a matter of law, as contended by the defendant Hartney in the second instance if he is wrong in his first contention, net profit in this case means, or should mean, the same proportion of said gross sum of $5,650.25 that said sum of $26,271.07 bears to said gross sum of $186,210.14, using the net profit from work sold in the year 1937 determined as hereinbefore in this paragraph set forth as the fair and reasonable yardstick with which to measure the net profit

the plaintiff would have made from said orders for work obtained by the defendant Hartney during February, March and April 1938.''

With respect to Amalia the findings of the master differ only as to the amount of orders secured by him from the plaintiff's customers during the period involved, and in the result of the computations based on the three respective methods of computation set forth as to Hartney. Under the first method, without deductions for the plaintiff's overhead, the net profit that would have been derived by the plaintiff from the Amalia orders as found by the master is $1,557.30. Under the second method, based on the total gross business of the plaintiff, less its cost, including overhead, the sum found by the master is $117.27. Under the third method, based on the gross business done by the plaintiff in New England, less cost, including overhead, the sum arrived at is $472.77. No objections were filed to the master's report.

A final decree was entered confirming the master's report and ordering Hartney to pay to the plaintiff as damages $2,773.92 with interest from the date of the filing of the master's report, $184.87, amounting in the aggregate to $2,958.79, within twenty days, with interest thereon to the date of payment, and costs; and ordering Amalia to pay to the plaintiff $1,557.30 with interest and costs as provided as to Hartney. Other directions in the decree designed to enforce the payments ordered, if not made within the time fixed, by causing the defendants' stock in the Hartney-Amalia corporation to be sold, need not be narrated.

The present case is not a suit for an accounting of the profits which the defendants may have made by reason of their wrongful conduct, but is one in which the plaintiff seeks damages, and the rule of damages is the same as though the plaintiff had brought an action for breach of contract. A plaintiff in an action for breach of contract is entitled in general to damages sufficient in amount to compensate him for the loss actually sustained by him and to put him in as good a position financially as he would be in had there been no breach. *Bucholz* v. *Green Bros. Co.*

272 Mass. 49, 54. *Cragin* v. *Jones,* 283 Mass. 474, 479. Williston, Contracts, § 1338. Am. Law Inst. Restatement: Contracts, § 329. The fundamental principle upon which the rule of damages is based is compensation. Its object is to afford the equivalent in money for the actual loss sustained by the wrong of another. *Sullivan* v. *Old Colony Street Railway,* 197 Mass. 512, 516. *Daniels* v. *Celeste,* 303 Mass. 148, 150. Compensation is the value of the performance of the contract, that is, what the plaintiff would have made had the contract been performed.

It is true that in a proper case in an action or suit for damages, in determining what it would have cost a plaintiff to perform the work that it would have performed had it not been for the wrongful conduct of a defendant, overhead costs or some items thereof would enter into the calculation of what it would have cost the plaintiff to do the work and consequently of what the plaintiff would have made. *Magnolia Metal Co.* v. *Gale,* 189 Mass. 124. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352. *Druggists Circular, Inc.* v. *American Soda Fountain Co.* 240 Mass. 531. *Palmer Electric & Manuf. Co.* v. *Underwriters' Laboratories, Inc.* 284 Mass. 550. Compare *Stone* v. *Wright Wire Co.* 199 Mass. 306; *Stein* v. *Strathmore Worsted Mills,* 221 Mass. 86; *Arey* v. *George Associates, Inc.* 299 Mass. 130, 133.

In the present case, however, as already pointed out, the master specifically found that the overhead costs of the plaintiff generally or in any of its divisions were not materially decreased by the loss of the orders improperly procured and executed by the defendants, and also that had the plaintiff executed those orders its overhead costs would not have been materially increased. This being so, it would seem manifest that the plaintiff's overhead costs in fact bore no relation to what the plaintiff would have made but for the defendants' wrongful conduct, and that if the whole or any part of these costs were to be deducted the plaintiff would not be in so good a position as it would be in but for the wrongful conduct of the defendants.

In these circumstances we are of opinion that the loss

which the plaintiff sustained was the difference between what it would actually have cost the plaintiff to execute the orders in question and the contract prices therefor. In the adoption by the judge of this measure of damages in the final decree there was no error.

*Decree affirmed with costs.*