## AMERICAN MECHANICAL CORPORATION *vs.* UNION MACHINE COMPANY OF LYNN, INC., & another.[1]

Essex. September 9, 1985. — November 18, 1985.

Present: GREANEY, C.J., GRANT, & FINE, JJ.

*Contract,* Sale of real estate. *Damages,* Breach of contract. *Consumer Protection Act,* Availability of remedy, Businessman's claim.

In an action for damages resulting from the defendant's breach of a contract to purchase commercial real estate, machinery, and equipment for $135,000, and the subsequent mortgage foreclosure sale of the property for $90,000 by a bank, the plaintiff was entitled to recover $45,000, the difference between the contract price and the sum received from the bank's sale of the property, where at the time the agreement was made the defendant knew that a foreclosure sale was likely if the sale of the property did not go through, and where, in the absence of a showing that the plaintiff failed to act reasonably to avoid the loss, there was no basis for reducing those damages. [99-104]

At the trial of an action seeking damages for breach of contract and relief under G. L. c. 93A, the judge erred in dismissing the c. 93A count at the close of all the evidence without a decision on the merits on the ground that no demand letter had been sent, where the complaint not only made specific reference to c. 93A, § 11, but also alleged facts from which it could be inferred that the parties were engaged in trade or commerce, and where the judge had heard evidence which, if it did not require, at least warranted a finding that the defendant had engaged in unfair and deceptive practices. [104-105]

CIVIL ACTION commenced in the Superior Court Department on October 22, 1979.

The case was heard by *Robert A. Mulligan,* J.

*Frank J. Teague* for the plaintiff.

*David E. Guthro* for the defendants.

---

[1] Eric Harper, president of Union Machine Company of Lynn, Inc.

FINE, J. In this case a seller of commercial real estate, machinery, and equipment sought damages from a prospective purchaser after the sale fell through. The claim was based on an alleged breach of contract and violation of G. L. c. 93A. After a jury-waived trial, a judge of the Superior Court concluded: (1) that, although there was a breach of contract, the right to recover damages, beyond nominal damages, had not been proved, and (2) that, in the absence of proof of a demand letter, recovery under G. L. c. 93A could only be had under § 11 of that chapter, and a violation of § 11 had not been pleaded. We disagree on both the issue of damages and the viability of the c. 93A claim.

We recite the essential facts from the judge's findings, all of which are supported by evidence, with some minor supplementation based upon undisputed testimony.

The plaintiff, American Mechanical Corporation (American), owned real estate in Saugus on which it conducted a precision machine parts manufacturing business. Machinery and office equipment were located on the premises. In September of 1976, American, through its president, Ronald Beckett, commenced negotiations for the sale of the real estate, machinery, and equipment, with the defendant Union Machine Company of Lynn, Inc. (Union), acting through its president, Eric Harper. Union and American were in the same business. In the course of the negotiations, Harper observed the shop in operation, examined American's business and financial records, and spoke to American's employees. American was in financial difficulty. It was in arrears on its mortgage payments to Saugus Bank & Trust Company, and the bank was pressing American to sell its business. During the negotiations, Beckett informed Harper about American's financial problems, and he told Harper that American was selling the property because of pressure from the bank.

On October 16, 1976, the parties reached agreement for the sale of the property. Harper gave Beckett a check, drawn on Union's account, in the amount of $5,000. On the back of the check, in addition to Beckett's signature on behalf of American and a description of the property, the following terms appeared:

the total price for the real estate, machinery and equipment was $135,000; the sale was contingent upon Union's obtaining a twenty-year mortgage in the amount of $90,000 at bank rates, and upon American's ability to convey free and clear title; and the check was to be held in escrow and not cashed until the closing. On October 18, 1976, without informing American, a stop payment order was put on the check by Harper's mother, acting on behalf of Union. A few days later, Harper and his mother visited the premises with representatives of the Essex Bank & Trust Company, a prospective mortgage lender. Around this time American, phasing out its business, referred several new business orders to Union.

On or about November 1, 1976, Harper informed Beckett that Union would not go through with the purchase. Beckett immediately informed the Saugus Bank & Trust Company. He was instructed by the bank to cease operations, and he was told that the bank would take possession of the property. Within a few days, the bank did take possession. American was unable to secure another purchaser. The bank sold the machinery for $35,000, and on June 1, 1977, it conducted a foreclosure sale of the real estate, realizing $55,000 on the sale. The bank was the purchaser; Harper attended the sale.

At trial, Union took the position that the writing on the back of the check was an insufficient memorandum to satisfy the Statute of Frauds or, alternatively, that, since Union had failed to obtain financing, the mortgage contingency had not been satisfied. The judge ruled against Union on both of these points, and he found a breach of the contract by Union. Inasmuch as Union has not appealed, we pass these issues and consider only whether American should have been awarded more than nominal damages on its contract claim and whether the c. 93A claim should have been decided on its merits.

*Damages for Breach of Contract.*

The judge ruled that the contract was one for the sale of the real estate for $100,000 and for the sale of the personal property for $35,000. Since $35,000 was obtained by the Saugus Bank & Trust Company when it sold the equipment and machinery, and that amount presumably was credited to American's ac-

count with the bank, the judge ruled that American had sustained no loss unless it did so with respect to the real estate. We need not decide whether a breakdown of the contract price between the real estate and the personalty was called for, or whether the price should be viewed as a lump sum for the entire sale. In our view, the result is not affected by any such determination. The judge ruled that the measure of damages for the breach of the agreement to purchase the real estate was the difference between the contract price and the fair market value on the date of the breach. Because he did not believe that the price obtained at the foreclosure sale, seven months after the breach, represented the fair market value of the property on the date of the breach, and because the plaintiff had produced no other evidence of the market value of the real estate on the date of the breach, the judge ruled that American had failed to prove actual damages.

The judge correctly stated the traditional rule generally applicable in measuring damages for breach of an agreement to purchase real estate. *Old Colony R.R.* v. *Evans,* 6 Gray 25, 35-36 (1856). *Capaldi* v. *Burlwood Realty Corp.,* 350 Mass. 765 (1966). *Rozene* v. *Sverid,* 4 Mass. App. Ct. 461, 465-466 (1976). 5 Corbin, Contracts § 1098A (1964). He was also correct in his conclusion that the foreclosure sale price, even if some evidence of the market value,[2] was not binding on him as establishing the market value of the property on the date of the breach. The actual sale of a piece of property normally provides strong evidence of market value, although the "evidentiary value of such sales in less than arm's-length transactions is diminished." *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 469 (1981). See also *DSM Realty, Inc.* v. *Assessors of Andover,* 391 Mass. 1014 (1984), and *Donlon* v. *Assessors of Holliston,* 389 Mass. 848, 857 (1983). We assume that the bank in conducting the sale complied with its duty of due diligence, observing the procedural requirements

---

[2] The evidence of the foreclosure sale price was admissible on the issue of market value since the presumption that the sale price had been fixed freely and not under compulsion (*Epstein* v. *Boston Housing Authy.,* 317 Mass. 297, 301 [1944]) was not overcome.

21 Mass. App. Ct. 97 · 101

American Mechanical Corp. *v.* Union Machine Co. of Lynn, Inc.

of both the mortgage and the statute (G. L. c. 244, § 14), and acted in good faith. See, for example, *Seppala & Aho Constr. Co.* v. *Petersen,* 373 Mass. 316, 326 (1977), and cases cited. It does not follow, however, that a sale so conducted will necessarily yield a price reflecting the full market value. See *Chartrand* v. *Newton Trust Co.,* 296 Mass. 317, 320-321 (1936).

Based upon his view of the applicable rule for measuring damages, and his disbelief of American's evidence of market value, the judge awarded American nominal damages only. The rule relied upon by the judge for measuring damages for breach of an agreement to purchase real estate, however, does not apply in all cases.

Consistent with general principles of contract law, the aim in measuring damages in the event of a breach is to place the injured party in as good a position as he would have been in had the contract been performed. *F.A. Bartlett Tree Expert Co.* v. *Hartney,* 308 Mass. 407, 411-412 (1941). *Abrams* v. *Reynolds Metals Co.,* 340 Mass. 704, 708 (1960). *Laurin* v. *DeCarolis Constr. Co.,* 372 Mass. 688, 691 (1977). Restatement (Second) of Contracts § 344 (1979). 5 Corbin, Contracts § 992 (1964). An important aspect of this principle is that if a party suing for breach of contract has sustained a loss as a result of a breach, and the loss is of such a nature that it was reasonably foreseeable by the parties or actually within their contemplation at the time the contract was entered into, then that loss may be recovered in an action for damages. *Lonergan* v. *Waldo,* 179 Mass. 135, 139 (1901). *Leavitt* v. *Fiberloid, Co.,* 196 Mass. 440, 446-448 (1907). *Curtis* v. *Boston Ice Co.,* 237 Mass. 343, 350 (1921). *Stein* v. *Almeder,* 253 Mass. 200, 204-205 (1925). *Monadnock Display Fireworks, Inc.* v. *Andover,* 388 Mass. 153, 157-158 (1983). See also Restatement (Second) of Contracts §§ 347, 351 (1979).

There is no logical basis for treating real estate purchase and sale agreements differently from other purchase and sale agreements, or from contracts generally, for purposes of measuring damages. See 11 Williston, Contracts § 1399 (3d ed. 1968). The usual formula for measuring damages for breach

of a real estate purchase and sale agreement — the difference between the contract price and the market value on the date of the breach — is merely a different formulation of the general rule for measuring contract damages. In the usual case, the contract price less the market value represents the seller's actual loss, and the formula, therefore, affords the injured seller an adequate remedy. In some cases, however, the actual loss suffered as a result of a breach exceeds the amount yielded by that formula. The question is whether, because the contract involves the sale of real estate, we may not, in such cases, refer to that aspect of the general rule of contract damages which gives recognition to actual losses sustained as a result of a breach when the losses are reasonably foreseeable or within the contemplation of the parties. That principle has been applied to contracts which are exclusively for the sale of real estate when the particular circumstances are such that the usual rule produces an inadequate remedy. *Cobb* v. *Wood,* 8 Cush. 228, 230 (1851). *Roper* v. *Milbourn,* 93 Neb. 809 (1913). *Taefi* v. *Stevens,* 53 N.C. App. 579 (1981), aff'd as modified, 305 N.C. 291 (1982). *Brewer* v. *Vanek,* No. 84-CA-56, Slip Op. (Ohio Ct. App., Feb. 21, 1985). *Senior Estates, Inc.* v. *Bauman Homes, Inc.,* 272 Or. 577 (1975). *Borton* v. *Medicine Rock Land Co.,* 275 Or. 59 (1976). See *Lynch* v. *Andrew,* 20 Mass. App. Ct. 623, 627-628 (1985).[3]

American proved that it sustained a loss in the amount of $45,000, the difference between the contract price of $135,000 and the $90,000 received from the mortgagee bank's sale of the real estate, machinery, and equipment. The judge's findings make it clear that, at the time the contract was entered into, Union knew that, if the sale of the property did not go through, the result would be that the bank would enforce its rights under the mortgage and that a foreclosure sale was likely. On almost identical facts, an Ohio court recently ruled that the correct

[3] In some jurisdictions, the usual rule for measuring damages for a buyer's breach of a real estate purchase and sale agreement is the difference between the contract price and the price obtained on resale. *Green* v. *Ansley,* 92 Ga. 647 (1893). *Clever* v. *Clever,* 38 Pa. Super. 66, 75 (1909). *Harris* v. *Dawson,* 479 Pa. 463, 466 (1978). *Tator* v. *Salem,* 81 A.D. 2d 727 (N.Y. 1981). See also Uniform Land Transactions Act § 2-504 (1980).

measure of damages, on traditional contract principles, was the full amount of the actual loss, the contract price less the amount received for the property at the foreclosure sale. *Brewer* v. *Vanek, supra.* We do not hesitate to reach the same result on the facts of this case. It does not seem to us to be a departure from established principles.

Union would, of course, be entitled to have American's damages reduced to the extent that American could reasonably have avoided the loss. Restatement (Second) of Contracts § 350 (1979). Thus, if, once it knew of the breach, American could reasonably have sold the property to someone else, it would be entitled to damages in an amount no greater than the difference between the contract price and the price for which it could have sold the property. Union established through cross-examination of Beckett that, following notification of the breach, no attempt was made by American to put the property back on the market. The judge found as a fact, however, that "American was unable to secure another purchaser for the realty and equipment." There is evidence in the record to support that finding. The evidentiary support consists principally of Beckett's recitation of what transpired between him and the Saugus Bank & Trust Company during the period immediately following notice of the breach. The bank moved relatively quickly to take possession, and the property was not of the kind for which one could assume there would be a ready market. Thus, it is not clear, as a practical matter, that American could have done anything to avoid the foreclosure. In any event, the burden of proving that losses could have been avoided by reasonable effort rests with the party in breach. See *Maynard* v. *Royal Worcester Corset Co.,* 200 Mass. 1, 6 (1908); *Food Specialties, Inc.* v. *John C. Dowd, Inc.,* 339 Mass. 735, 748 (1959); *Clark* v. *General Cleaning Co.,* 345 Mass. 62, 65 (1962); *National Med. Care, Inc.* v. *Zigelbaum,* 18 Mass. App. Ct. 570, 581 (1984); *Hedgecock* v. *Stewart Title Guar. Co.,* 676 P.2d 1208, 1210 (Colo. App. 1983); Farnsworth, Contracts § 12.12 (1982); Restatement (Second) of Contracts § 350 comment c (1979). Union's showing on this point was insufficient to establish that American failed to act reasonably to avoid the loss. Accordingly,

there is no basis for reducing the damages to which American would otherwise be entitled because of any failure on its part to act reasonably to avoid the loss.[4]

*The Chapter 93A Claim.*

No demand letter was sent from American, either to Union or to Harper. Recovery under G. L. c. 93A, § 11, however, is not conditioned upon the sending of a demand letter. The complaint not only makes specific reference to § 11 in its prayer for relief, but it alleges facts from which it may be inferred that the parties were engaged in trade or commerce, and it states all the other necessary elements of a valid claim under § 11. The judge dismissed the c. 93A count at the close of all the evidence. He did so on the assumption that the complaint sought recovery only under G. L. c. 93A, § 2. That section only declares certain unfair acts unlawful and leaves to §§ 9 and 11, respectively, the creation of the remedies. The reference to § 2 in a complaint seeking relief under G. L. c. 93A, § 11, was entirely appropriate.

The judge heard evidence which, if it did not require, at least warranted, a finding that Union and Harper had committed unfair and deceptive practices. Union stopped payment on the $5,000 deposit check two days after the agreement had been reached, indicating to the bank that its reason for stopping payment was that it was "not satisfied." For a period of several weeks, Union did not let American know that the stop payment order had been given. During this period, officials of the Essex Bank and Trust Company, represented by Union to be its prospective mortgage lender, were brought to the premises, and Beckett was requested to allow them to inspect the property: American was referring its customers to Union; and a person indicating some interest in purchasing the property was told by Beckett that it had been sold. Harper was actively involved in the contacts between American and Union. The judge could have concluded that the conduct of Union and Harper reached the "level of rascality" required for a violation G. L. c. 93A,

---

[4] We need not reach American's argument that it was entitled at least to damages in the amount of $5,000, the amount of the deposit check on which payment had been stopped.

§ 2. See *Levings* v. *Forbes & Wallace, Inc.,* 8 Mass. App. Ct. 498, 504 (1979). Dismissal of the chapter 93A count without a decision on the merits, therefore, was improper.

The judgment is vacated. Final judgment shall enter for the plaintiff on Count 1 of the complaint against Union in the amount of $45,000, with interest. The order dismissing Count 2 of the complaint is vacated, and the case is remanded to the Superior Court for findings of fact, conclusions of law, and entry of judgment on that count.

*So ordered.*