NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12287

   KIRIBATI SEAFOOD COMPANY, LLC, & another[1] vs. DECHERT LLP.


      Suffolk.     April 6, 2017. – October 11, 2017.

   Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd,
                   & Cypher, JJ.[2]


Attorney at Law, Malpractice, Negligence.  Negligence, Attorney
     at law, Proximate cause.  Proximate Cause.  Damages,
     Mitigation.



     Civil action commenced in the Superior Court Department on
July 1, 2013.

     The case was heard by Kenneth W. Salinger, J., on motions
for summary judgment.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Megan C. Deluhery (John R. Neeleman, of Washington, also
present) for Kiribati Seafood Company, LLC.
     Denis M. King (Richard M. Zielinski also present) for the
defendant.



_____

     [1] Olympic Packer, LLC.

     [2] Justice Hines participated in the deliberation on this
case prior to her retirement.

GANTS, C.J.  The issue on appeal is whether, in a legal malpractice action, a court's error of law constitutes a superseding cause that bars recovery to the plaintiff client even where the defendant attorney was negligent for failing to prevent or mitigate the legal error.  The plaintiff, Kiribati Seafood Company, LLC (Kiribati), brought a legal malpractice claim against its former law firm, Dechert LLP (Dechert).  Kiribati alleged that Dechert negligently failed to provide a French appellate court with the evidence the court deemed necessary for Kiribati to prevail on a claim, which resulted in the court's denial of the claim.  A judge of the Superior Court granted summary judgment to Dechert and denied partial summary judgment to Kiribati.  The judge determined that the French appellate court committed an error of law in requiring this evidence and that, even if Dechert were negligent in failing to provide the evidence to the court, Kiribati could not recover damages for Dechert's negligence because the court's legal error was a superseding cause of the adverse decision.  We conclude that an error of law under these circumstances is a concurrent, not a superseding, proximate cause and that the judge therefore erred in granting summary judgment to Dechert and denying partial summary judgment to Kiribati.

Background.  Because this is an appeal from an allowance of summary judgment, we set forth the undisputed material facts.

Kiribati purchased a fishing vessel known as the Madee (ship), and chartered it to Olympic Packer, LLC, and Dojin Co., Ltd., for the purpose of fishing for tuna in the Pacific Ocean.[3] After sustaining damage to its rudder, the ship was placed in a dry dock in the Autonomous Port of Papeete (port) in Tahiti to undergo repairs. When the dry dock collapsed, the ship sustained damages so severe that it was deemed a "constructive total loss" by Kiribati's "port risk" insurer, Certain Underwriters of Lloyd's of London (Lloyd's). Kiribati retained two attorneys in the Paris office of the law firm Coudert Brothers LLP (Coudert) to file a lawsuit for damages against the port in the Commercial Court of Papeete (commercial court). When these two attorneys left Coudert to join Dechert, Kiribati continued to retain them and transferred the representation to Dechert.

Lloyd's paid Kiribati $1,763,803.71 on its insurance claim regarding the loss of the ship, which compensated Kiribati for some, but not all, of its losses. As a result of its payment, Lloyd's had a right of subrogation to recover that amount from the port. In April, 2004, Lloyd's and Kiribati entered into a written agreement jointly to prosecute Kiribati's litigation in

---

[3] Kiribati Seafood Company, LLC, and Olympic Packer, LLC, are limited liability companies organized in the State of Washington. Dechert LLP is a law firm organized as a limited liability partnership that is registered in Pennsylvania but has offices around the world, including in Boston.

the commercial court, where Kiribati sought to recover its losses that were not compensated by Lloyd's, and where Lloyd's sought to recover through subrogation the amount it paid to Kiribati. As part of the agreement, Lloyd's agreed to pay half of the attorney's fees and costs associated with this litigation.

The agreement between Kiribati and Lloyd's jointly to prosecute the suit against the port did not end Kiribati's financial disputes with Lloyd's. Kiribati contended that it was paying substantially more than its fifty per cent share of the legal fees in the litigation and that Lloyd's was failing to pay its equal share. Kiribati also claimed that Lloyd's had failed to pay it in full for the "sue and labor" and mitigation expenses it was entitled to under its policy. To settle these and other disputes, in December, 2004, Kiribati and Lloyd's entered into a new agreement in which Kiribati released Lloyd's from all outstanding claims, including its claims for unpaid attorney's fees and "sue and labor" and mitigation expenses. In return, Lloyd's assigned its subrogation claim to Kiribati.

In January, 2008, the commercial court issued a judgment in favor of Kiribati and against the port. As part of the judgment, the court found that the assignment of the subrogation claim was "signed abroad" by "two foreign registered entities" without any specific agreement that French law would apply, so

the validity of the assignment could not be determined under French law. The court concluded that it was "valid" under "foreign law," and therefore awarded Kiribati the full amount of the subrogation claim assigned to it by Lloyd's -- approximately $1.76 million. The port appealed from the decision to the Court of Appeals of Papeete (court of appeals).

Tahitian courts are part of the French legal system. A judgment by the commercial court may be appealed from as of right to the court of appeals, which will review the decision de novo and consider new evidence offered by the parties to supplement the record. A decision by the court of appeals is appealable from as of right to the Cour de cassation in Paris, which is the French Supreme Court, but that court will review decisions only for errors of law.

In its first appellate decision, issued in April, 2010, the court of appeals affirmed much of the judgment of the commercial court, but it deferred decision regarding its enforcement of the assignment of the subrogation claim. It did not challenge the validity of the assignment under foreign law but noted that the "enforceability" of the assignment in a French court of law against a French defendant must be determined according to French law, which forbids "double compensation of the same damages." Where the port claimed that Kiribati was seeking "a double compensation for the damages and accordingly an unjust

enrichment," the court of appeals decided to defer any decision regarding this claim for compensation to allow Kiribati to prove the amount paid in consideration for the assignment by showing the "actual price of the transfer."

After the first appellate decision, a Dechert attorney, Xavier Nyssen, advised Dennis Moran, an attorney in another law firm who was acting essentially as Kiribati's general counsel, that he needed evidence of the consideration paid by Kiribati for the assignment to address the court of appeals's concern about double compensation.  Moran on two separate occasions provided various documents to Dechert, including (1) a 2004 letter from Moran to Lloyd's counsel demanding payment of Lloyd's equal share of Coudert's legal fees, with attached payment records that demonstrated that Kiribati had paid far more of the attorney's fees than did Lloyd's despite the provision in the settlement agreement that payment of the fees be shared equally; (2) the December, 2004, agreement between Kiribati and Lloyd's that included a release by Kiribati of all further claims on its Lloyd's policy; (3) correspondence identifying the various claims against Lloyd's that Kiribati had released; and (4) an unsworn written statement by a Lloyd's representative that declared that "[t]he subrogation rights were assigned for valuable consideration, the amount of which is privileged."

In support of its brief, Dechert submitted to the court of appeals as evidence only the 2004 letter from Moran, without any of the supporting documentation regarding legal fees, and the unsworn written statement by the Lloyd's representative, without the policyholder's release or the correspondence identifying the released claims. After the port in its response noted that Kiribati had provided no proof of having paid attorney's fees that Lloyd's was obligated to pay, another Kiribati attorney (who was not associated with Dechert) caused Nyssen again to be sent the documents that Moran had earlier provided and informed Nyssen that he needed to submit the attorney's fee payment records and the policyholder release in order to demonstrate the payment of consideration for the assignment. Dechert did not further supplement the record by providing these documents to the court of appeals.

In May, 2011, the court of appeals in its final decision reduced the amount of Kiribati's award by the amount of the assigned subrogated claim because Kiribati had failed to meet its burden to provide evidence of the "financial compensation" it paid for the assignment, explaining that "double recovery for the same damage must be avoided." The court specifically noted that Kiribati had failed to provide any evidence that it had paid attorney's fees that Lloyd's was obligated to pay, or that it had released Lloyd's from legal claims that Kiribati

otherwise could have brought in a court of law.

In June, 2011, Kiribati was in receivership, so Nyssen sent an electronic mail message to its receiver informing him that the court of appeals decision could be challenged before the Cour de cassation, but only as to errors of law. Nyssen wrote, "As for Kiribati's subrogation interest acquired from . . . Lloyd's, there may be grounds to call into question its decision, although we would need the opinion of a lawyer registered with the Cour de cassation to take [a] position." Nyssen wrote that he "would not recommend challenging the decision" because of the cost and duration of the appeal, which he estimated at one to two years, and because an appeal by Kiribati may cause the defendants to challenge the entirety of the court of appeals ruling, which might result in a suspension of its enforcement. The receiver later filed in the receivership action a motion for authorization to waive an appeal in the Tahiti litigation, attaching to his declaration a letter from an attorney for Kiribati stating that "Kiribati's shareholders will follow Dechert's advice and not appeal the Tahiti litigation outcome." The court approved the receiver's request for authorization to waive the appeal.

In July, 2013, Kiribati commenced this action in the Superior Court of Massachusetts against Dechert, alleging, among other claims, that Dechert was professionally negligent in its

prosecution of the assigned subrogation claim because it failed to present evidence the court of appeals had requested and that Dechert had in its possession, resulting in a loss to Kiribati of approximately $1.76 million.[4]  Dechert moved for summary judgment as to all of the remaining claims; Kiribati cross-moved for partial summary judgment on its legal malpractice claim.

In support of their motions, both parties submitted affidavits from their respective chosen experts on issues of French law.  Dechert moved to strike the affidavit submitted by Kiribati's expert, claiming that it failed to show that his education, training, and experience qualifies him to provide expert testimony on any aspect of French law.  The motion judge granted the motion, finding that Kiribati's expert had "never practiced as a lawyer in France . . . and [did] not identif[y] any other education, training, experience, or familiarity in or with the topics he addresses in his expert reports."  Kiribati did not challenge the qualifications of Dechert's expert, a practicing French lawyer, and the judge credited portions of the affidavit he submitted in support of Dechert's motion regarding the content of French law.

In granting Dechert's motion for summary judgment, the judge noted that the content of foreign law is a question of law to be decided by the court.  He determined that the court of

_____

[4] None of Kiribati's other claims is at issue on appeal.

appeals had committed judicial error under French law in disallowing recovery of the $1.76 million assigned subrogation claim for lack of proof that it was not an impermissible double recovery. The judge also determined that, regardless of whether Dechert was negligent in its handling of the appeal and regardless of whether the court's error of law was foreseeable, Dechert could not be found liable because the error of law by the court of appeals underlying the resulting adverse ruling was "a superseding cause that breaks the chain of causation flowing from [Dechert's alleged negligence]" and "that relieves Dechert of any negligence in its representation of Kiribati before that court."[5] Kiribati appealed, and we transferred the case to this court on our own motion.

Discussion. Our review of a motion judge's decision on summary judgment is de novo, because we examine the same record and decide the same questions of law. See Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 499 n.16 (2010); Leavitt v. Mizner, 404 Mass. 81, 88 (1989); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

The central issue in this case is the relationship between

---

[5] In a separate order, the judge granted Dechert's motion for costs as the prevailing party, and awarded $76,130.13 to compensate Dechert for the cost of obtaining deposition transcripts and "accurate English translations of key documents in [the] case" and for its attorney's travel to three depositions.

attorney malpractice and judicial error, more specifically, the circumstances under which an attorney should be relieved of liability for professional negligence where the attorney's negligent act or omission precedes judicial error.

Attorneys who enter into attorney-client relationships owe their clients "an obligation to exercise a reasonable degree of care and skill in the performance of [their] legal duties." Global NAPs, Inc., 457 Mass. at 500, quoting Pongonis v. Saab, 396 Mass. 1005, 1005 (1985).  "To prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained . . . ; that the client has incurred a loss; and that the attorney's negligence is the proximate cause of the loss . . . ."  Global NAPs, Inc., supra, quoting Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass. App. Ct. 107, 111 (1985). "Expert testimony is generally necessary to establish that an attorney failed to meet the standard of care owed in the particular circumstances."  Global NAPs, Inc., supra, citing Pongonis, supra.  But "such testimony is not essential where 'the claimed malpractice is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence,' or where an attorney disobeys the lawful instructions of his client and a loss ensues for which the

attorney is responsible."  Global NAPs, Inc., supra, quoting Pongonis, supra.

As to the element of proximate cause, a client must demonstrate that it "probably would have obtained a better result had the attorney exercised adequate skill and care." Global NAPs, Inc., 457 Mass. at 500, quoting Fishman v. Brooks, 396 Mass. 643, 647 (1986).  Generally, the question of what the probable outcome would have been had the attorney acted reasonably is determined by a "trial within a trial," in which a new trier of fact decides both whether the attorney was negligent and what the outcome of the litigation would have been in the absence of negligence.  Fishman, supra.  The new trier of fact does not attempt subjectively to determine what the earlier trier of fact would have done; neither the judge nor the jurors at the earlier trial may testify at the new trial as to what they would have done under different circumstances.  See id. (jury evaluate consequences of attorney negligence objectively). Rather, the new trier of fact makes an independent determination as to what reasonably would have been the outcome of the earlier trial in the absence of negligence, based on the applicable law and the evidence presented at the new trial.  See 4 R.E. Mallen, Legal Malpractice § 33:8, at 677 (2017 ed.), citing Cecala v. Newman, 532 F. Supp. 2d 1118, 1136 (D. Ariz. 2007) (trier of fact determines "what the result 'should have been'"); Justice

v. <u>Carter</u>, 972 F.2d 951, 956-957 (8th Cir. 1992); <u>Phillips</u> v. <u>Clancy</u>, 152 Ariz. 415, 418 (1986); <u>Lombardo</u> v. <u>Huysentruyt</u>, 91 Cal. App. 4th 656, 670-671 (2001); <u>Harline</u> v. <u>Barker</u>, 912 P.2d 433, 441 (Utah 1996).

Proximate cause in an attorney malpractice case is more complicated where the defendant attorney contends that the adverse outcome was the product of the court's legal error. Judges, being human, sometimes err as to the law. "Theoretically, it is always foreseeable that a judge might err in some manner; however, it is not typically foreseeable on what issues a judge will err and on what issues a judge will rule correctly." <u>Stanfield</u> v. <u>Neubaum</u>, 494 S.W.3d 90, 100 (Tex. 2016). Where an attorney makes a reasonable and correct argument of law and loses because of judicial error that was not foreseeable, the attorney cannot be found negligent for failing to prevent or mitigate that legal error. See <u>Correia</u> v. <u>Fagan</u>, 452 Mass. 120, 127 (2008) (liability for professional negligence dependent on showing loss was "reasonably foreseeable" [citation omitted]).

But where the judicial error is foreseeable, such as where a judge or an appellate court has indicated an intention to rule in a manner that the attorney believes to be an error of law, then an attorney has an obligation to take reasonable and prudent steps to prevent or mitigate that error. See <u>Skinner</u> v.

Stone, Raskin & Israel, 724 F.2d 264, 265-266 (2d Cir. 1983); Stanfield, 494 S.W.3d at 100. Where the legal error will certainly doom the client's case, the attorney has few options but to provide additional argument or briefing in an attempt to demonstrate to the court the error of its foreseeable ruling of law. But where the client can still prevail on the facts even if the court errs as to the law, the attorney is negligent where he or she fails to take reasonable steps to demonstrate to the court why the client still wins under the court's erroneous, but foreseeable, view of the law. For instance, where a judge in a medical malpractice case has provided counsel with the instruction the judge intends to give to the jury regarding a physician's duty to obtain a patient's informed consent for a medical procedure, and where the physician's attorney fails to persuade the judge that the instruction is an error of law because it overstates a physician's duty, and where the physician has evidence in his or her possession that would prove that the physician complied with the duty erroneously described by the judge, the physician's attorney would be negligent if he or she failed to offer that evidence at trial. Stated simply, where an attorney will foreseeably lose on the law but can still win on the facts, an attorney is negligent if he or she forgoes the opportunity to win on the facts. See, e.g., Skinner, supra (summary judgment for attorneys reversed in legal malpractice

action where attorneys knew of impending judicial error and failed to take preemptive steps); Lombardo, 91 Cal. App. 4th at 667-668 (client subjected to "unnecessary risk" where there was "abundant evidence" that attorney could have foreseen judicial error and failed to take "all reasonable steps" to mitigate impact); Temple Hoyne Buell Found. v. Holland & Hart, 851 P.2d 192, 198-199 (Colo. App. 1992) (obligation to anticipate "reasonably foreseeable risks" includes taking reasonably objective steps to avoid impact of foreseeable legal error).[6]

To be clear, this does not suggest that an attorney has an obligation under the duty of reasonable care to argue an error of law.  But where a court has indicated that it has a different view of the law from that of the attorney, and where the client can prevail on the facts even under that different view, an attorney is negligent if he or she forfeits that opportunity by failing to argue in the alternative.

Dechert contends that, where a court rules against a client based on a foreseeable error of law, the client's attorney

---

[6] The adage penned by Carl Sandburg, attributed to "a battered barrister," comes to mind:  "If the law is against you, talk about the evidence . . . .  If the evidence is against you, talk about the law . . . .  [A]nd . . . if the law and the evidence are both against you, then pound on the table and yell like hell."  C. Sandburg, The People, Yes, in The Complete Poems of Carl Sandburg 551 (1969).  We discourage attorneys from following the advice in the third sentence, but an attorney may be negligent if he or she fails to follow the advice in the first two sentences.

cannot be liable for failing to take reasonable steps to prevent or mitigate the consequences of that error by offering evidence that would enable the client to prevail even under the court's erroneous view of the law, because in such circumstances a court's legal error will always be the proximate cause of the adverse judicial decision.  It claims that, in the trial within a trial that occurs in a legal malpractice case, the new trier of fact must apply the correct law, and the judge's error of law, not the attorney's negligence, will always be revealed as the proximate cause of the adverse result.  In the context of this case, Dechert argues that a new, reasonable trier of fact, correctly applying French law, must conclude that Kiribati should have prevailed without proof of the consideration paid for the assignment, and therefore any negligence in failing to provide that proof cannot be the proximate cause of the lost $1.76 million.

The fundamental flaw in this argument is that a plaintiff's loss need not have only one proximate cause; there can be multiple concurrent proximate causes.  See, e.g., Mullins v. Pine Manor College, 389 Mass. 47, 58, 62-63 (1983) (injury to rape victim caused both by assailant and by college's negligent security); Skinner, 724 F.2d at 266 ("there [can be] several proximate or efficient causes of an injury"); Stanfield, 494 S.W.3d at 97 (same).  See also Matsuyama v. Birnbaum, 452 Mass.

1, 30 (2008) ("'substantial contributing factor' test is useful in cases in which damage has multiple causes").  Assuming for the sake of argument that the court of appeals truly made an error of law, a reasonable finder of fact would conclude that there were two independent proximate causes of Kiribati's loss: Dechert's negligence in failing to furnish the court with proof of the consideration paid for the assignment, and the court's error of law in concluding that the assigned subrogation claim was not enforceable under French law absent a demonstration that it would not result in "double compensation."

Nor is this flaw cured in the circumstances of this case by characterizing the judicial error as the superseding cause. A superseding cause in legal malpractice "(1) must have occurred after the original negligence; (2) cannot [be] the consequence of the attorney's negligence; (3) created a result that would not otherwise have followed from the original negligence; and (4) was not reasonably foreseeable."  1 R.E. Mallen, Legal Malpractice § 8:25, at 1049 (2017 ed.).  Where the intervening cause meets all four criteria, the intervening cause is a new and independent cause that breaks the chain of causation, becoming a superseding cause that relieves the defendant of liability for the original negligence.  See Kent v. Commonwealth, 437 Mass. 312, 321 (2002) (intervening event that is "superseding cause of the harm" breaks chain of factual

causation); Mullins, 389 Mass. at 62 (superseding cause severs chain of proximate causation); Stanfield, 494 S.W.3d at 97 (superseding cause is new and independent cause that intervenes between original wrong and final injury and "thus destroys any causal connection between the defendant's negligence and the plaintiff's harm, precluding the plaintiff from establishing the defendant's negligence as a proximate cause"). But where the intervening cause (here, the court's alleged error of law) is reasonably foreseeable and the attorney could have taken reasonable steps to prevent or mitigate the anticipated harm, the intervening cause is a "concurring cause" that leaves the causal link between the defendant's negligence and the plaintiff's harm unbroken. See Mullins, supra at 62-63 (criminal act of third party is not superseding cause that excuses negligent security precautions "if such act was, or should have been, foreseen"); Stanfield, supra at 100 ("if the judicial error alleged to have been a new and independent cause is reasonably foreseeable at the time of the defendant's alleged negligence, the error is a concurring cause as opposed to a new and independent, or superseding, cause"). Because an attorney's failure to prevent or mitigate an error of law can be negligent only where it is foreseeable that the court would commit the error, and because an intervening cause cannot be a superseding cause where the error was foreseeable, a judicial error cannot

be a superseding cause where an attorney is negligent for failing to take reasonable steps to prevent or mitigate the judicial error or resulting harm.

Therefore, in determining proximate cause in a legal malpractice action where there is an alleged error of law, the trier of fact in the "trial within a trial" must determine whether the court that foreseeably made the error of law would nonetheless have ruled in the client's favor had the attorney taken reasonable steps to prevent or mitigate the error of law. The standard remains objective, not subjective; the trier of fact is not attempting to predict what the judge or judges who made the error of law would have done, but is making its own determination whether an attorney's reasonable efforts would probably have prevented or mitigated the error such that the client would have prevailed. In the context of this case, where the court of appeals ruled against Kiribati because Dechert failed to submit the evidence it had been furnished that would have proved Kiribati's disproportionate payment of attorney's fees and its release of valuable claims against Lloyd's, Dechert's failure to provide the court with this evidence may be found to be the concurrent proximate cause of the court's adverse decision. The judge therefore erred in ruling that Kiribati cannot prevail in proving the element of causation.

Because the judge rested his allowance of Dechert's motion

for summary judgment on his finding of superseding causation, the judge did not reach the issue of negligence. Inasmuch as our review is de novo and Kiribati moved for summary judgment on that issue, we do reach it. Where it is undisputed that the court of appeals deferred its decision regarding the assigned subrogation claim to allow Kiribati to prove the amount paid in consideration for the assignment by showing the "actual price of the transfer," and where it was plainly foreseeable from its first appellate decision that it would not enforce the assignment without such proof, and where Dechert had the documentation in its possession that would have demonstrated that there was substantial consideration for the assignment, we conclude that Dechert's failure to furnish the court of appeals with the documentation was so plainly negligent that no expert testimony is needed to establish it.[7] To prevail on its assigned subrogation claim, Kiribati needed the French court both to declare the assignment of the subrogation claim valid as a matter of law and to enforce it. It was perfectly reasonable

---

[7] We reach this conclusion regardless of whether French or Massachusetts law supplies the applicable standard of care. Both Dechert's expert, whose testimony the judge credited with respect to applicable principles of French law, and Kiribati's expert submitted affidavits in which they concluded that French lawyers have an obligation to act with reasonable diligence on behalf of their clients, a duty similar to that required under Massachusetts law. See Pongonis v. Saab, 396 Mass. 1005, 1005 (1985) ("An attorney owes his client an obligation to exercise a reasonable degree of care and skill . . .").

for Dechert to argue that enforcement under French law follows inevitably from validity, and that it need not prove that Kiribati paid substantial consideration for the assignment. But where Dechert possessed the documentation that would have enabled Kiribati to prevail on its assigned subrogation claim even if the court of appeals concluded that proof of consideration was needed to avoid "a double compensation for the damages and accordingly an unjust enrichment," it was plainly unreasonable for Dechert to fail to argue in the alternative and provide the court with this documentation. Dechert may have believed that the court of appeals was wrong as a matter of law, but Dechert could have enabled Kiribati to win on its claim even if the court of appeals persisted in requiring what Dechert contended was an unnecessary factual showing to justify enforcement. In short, Dechert may reasonably have believed that the question was solely one of law and not of fact, but where it had in its possession the evidence that would have enabled Kiribati to demonstrate that Kiribati would not be unjustly enriched if the court were to enforce the assignment, Dechert's failure to provide the court with that evidence was unreasonable.

We have considered and rejected Dechert's contention that it was barred by a confidentiality provision in the second settlement agreement from providing the agreement to the court

of appeals without Lloyd's approval, which Lloyd's withheld.  We have examined the settlement agreement, which is a fully integrated agreement, and conclude that it contains no confidentiality provision that barred such disclosure to the court.  Rather, the agreement provides in paragraph twelve, "Underwriters shall execute the attached 'ASSIGNMENT OF SUBROGATION RIGHTS' that Kiribati may use to facilitate the transfer of interests in the Tahiti litigation without disclosing the full contents of this Agreement."  The fact that an assignment was attached to the agreement that did not disclose the full contents of the agreement cannot reasonably be interpreted as a confidentiality provision barring such disclosure.  Nor can paragraph seven of the settlement agreement reasonably be interpreted to bar disclosure of that agreement to the court of appeals.  The relevant part of that paragraph states, "The fact of this agreement shall not be admissible in the future for any purpose, except in an action to enforce this agreement or as necessary to implement its terms."  It was plainly necessary to disclose the "fact" of the agreement to the court of appeals "to implement its terms" where the failure to do so would foreseeably cause the court to decline to enforce the assignment of subrogation rights provided in that agreement.  Moreover, it is undisputed that the settlement agreement had earlier been filed in a court proceeding in Seattle, Washington,

with Lloyd's knowledge.

The scope of damages raises another issue that we address. A plaintiff in a negligence action has a duty to mitigate damages "that were avoidable by the use of reasonable precautions."  Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 586 (1982).  Where a client suffers an adverse decision because of both an error of law and an attorney's negligence in failing to act reasonably to prevent or mitigate that error, the client's duty to mitigate damages might in some circumstances require appealing from that adverse decision to a higher court to correct the lower court's error of law.  In such cases, the loss to the client caused by the attorney's negligence would be only the attorney's fees and costs incurred in prosecuting an appeal that would not have been necessary had the attorney acted with reasonable care.  The defendant, however, bears the burden of proving by a preponderance of the evidence that the plaintiff failed to fulfil the duty to make reasonable efforts to mitigate damages.  See Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County, 465 Mass. 584, 592 (2013) (in wrongful discharge action, employer bears burden of proof on issue of mitigation of damages); American Mech. Corp. v. Union Mach. Co. of Lynn, 21 Mass. App. Ct. 97, 103 (1985) ("[T]he burden of proving that losses could have been avoided by reasonable effort rests with the party in breach").  Here, where

Dechert recommended against an appeal to the Cour de cassation, Dechert cannot possibly meet its burden of proving that Kiribati acted unreasonably by failing to appeal from the court of appeals decision.  Therefore, the loss proximately caused by Dechert's negligence is the loss arising from the adverse ruling of the court of appeals on the assigned subrogation claim.

As a result of this analysis, we need not decide whether the judge abused his discretion in striking the affidavit of Kiribati's expert on French law.  That expert affidavit is not necessary to find that Dechert was negligent where its negligence was "obvious," or to find that its negligence was a concurrent proximate cause of Kiribati's loss.  See Global NAPs, Inc., 457 Mass. at 500, quoting Pongonis, 396 Mass. at 1005.  Nor is it necessary to decide whether the court of appeals was correct in its understanding of French law regarding the assignment of subrogation claims, because Kiribati prevails on its legal malpractice claim regardless of whether the court of appeals was in error.  And we need not determine whether an appeal to the Cour de cassation would have resulted in the mitigation of damages by the reversal of the court of appeals ruling, because Dechert cannot meet its burden of proving that Kiribati failed reasonably to mitigate damages by deciding not to appeal.

Conclusion.  We reverse the judge's allowance of Dechert's

motion for summary judgment and his denial of Kiribati's motion for partial summary judgment on its legal malpractice claim, and remand the case to the Superior Court for proceedings consistent with this opinion.

<u>So ordered</u>.