D. DAVID ABRAMS *vs.* REYNOLDS METALS COMPANY.

Suffolk.    November 4, 1959. — April 12, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Damages,* For breach of contract, Mitigation.

Statement as to the scope of review upon an appeal from an order for judgment on the report of an auditor whose findings were to be final, constituting a case stated. [705]

In an action for breach of a contract whereby the defendant was to manufacture for the plaintiff and deliver certain parts of "fruit juicers," the plaintiff was not entitled to recover the expense of an unreasonable attempt to assemble and salvage defective parts furnished by the defendant, or for "loss on account of advertising" not shown to have been due to the defendant's failure in performance of the contract or to be other than speculative in amount, or a sum paid by the plaintiff in an adjustment, not shown to have been brought about by the defendant's failure in performance rather than by factors not attributable to the defendant, with one whom the plaintiff had hired to assemble the "juicers." [709]

CONTRACT.    Writ in the Superior Court dated June 11, 1947.

The plaintiff appealed from an order for judgment by *Murray,* J., after hearing on the report of an auditor.

The case was submitted on briefs.

*Joseph G. Bryer,* for the plaintiff.

*Walter Powers, Jr.,* for the defendant.

COUNIHAN, J.    This is an action of contract by the plaintiff (Abrams) against the defendant (Reynolds) to recover damages for breach of contract. Reynolds filed a

declaration in set-off to recover damages for goods sold and delivered to Abrams between September 27, 1945, and November 2, 1945, under the contract. The action was referred to an auditor whose findings of fact were to be final. The auditor filed a report which was recommitted to him. He later filed a substitute report which was recommitted to him to hear further evidence. After hearing, the auditor filed a supplemental report.

Both the plaintiff and the defendant filed motions for judgment on the auditor's reports. In his substitute report the auditor stated that Reynolds offered no evidence of damages on its claim in set-off but that the parties agreed that there was due Reynolds the sum of $5,849.52 plus interest at six per cent to October 25, 1951, making a total of $7,386.

After a hearing on the motions for judgment the judge found for the defendant (the plaintiff in set-off) in the sum of $10,569.37 which included interest to December 31, 1958, and he found for the plaintiff in the sum of $6,858.22 which included interest to the same date. In accordance with G. L. c. 232, § 11, he ordered that judgment be entered for the defendant (the plaintiff in set-off) in the sum of $3,711.15.

The report of an auditor whose findings of fact are final constitutes a case stated. *United States Fid. & Guar. Co.* v. *English Constr. Co.* 303 Mass. 105, 108. The action therefore properly comes before us on the appeal of Abrams. G. L. c. 231, § 96. The scope of review in a case stated has been repeatedly decided. It was the duty of the judge, and it is now our duty, to enter the correct judgment on the auditor's reports. We are in the same position as to both law and facts as was the judge below. *Howell* v. *First of Boston Intl. Corp.* 309 Mass. 194, 196. The auditor's findings of subsidiary facts must stand unless there was no evidence in law sufficient to warrant them, but conclusions of fact reached solely by way of inference from such findings are open to revision here. *New England Gas & Elec. Assn.* v. *Ocean Acc. & Guar. Corp. Ltd.* 330 Mass. 640, 644–645.

The auditor's reports show that Abrams bases his claim for damages against Reynolds on correspondence between them in September, 1945, which Abrams asserts constituted a written contract whereby Reynolds was to furnish him with sufficient cast aluminum parts to enable Abrams to assemble and sell 25,000 "fruit juicers"; and that Reynolds failed to deliver the requisite number of parts to permit Abrams to make deliveries of the assembled product in time for the Christmas trade. In addition Abrams contends that many of the parts delivered by Reynolds were defective.

For a period of several years prior to September, 1945, Abrams had been a jobber in household wares and other products. In August, 1945, he conceived the idea of manufacturing a device for squeezing juice from fruit. Up to this time he had no experience in manufacturing. He had a design for a "fruit juicer" made by an engineer and had aluminum molds cast. He talked with Reynolds, which had been engaged in war work for the government, with a view to having it manufacture the parts which comprised the "juicer." These parts consisted of a cast aluminum bowl, cast aluminum legs, and a cast aluminum lever. Finally on September 13, 1945, Abrams sent an order to Reynolds to manufacture bowls, legs and levers to enable him to assemble 25,000 "juicers" to be delivered at the rate of approximately 1,000 sets a day. On September 27, 1945, Reynolds accepted the order by a letter which stated, "[i]n accordance with our arrangements, we will start daily shipments against your order as quickly as possible . . . ." In the meantime Abrams had arranged with one Gilbert who had operated a machine shop for war work to assemble and pack the "juicers." Abrams was to furnish wooden bases and the three cast aluminum parts, and Gilbert, who later organized a corporation called the Gilbert Manufacturing Company, Inc. (Gilbert), was to lacquer the wooden bases, furnish rivets, screws and pins, pack the assembled units into cartons furnished by Abrams, and ship them as directed by Abrams. Gilbert was to be paid thirty-five cents

for each unit shipped. During the month of October, 1945, Reynolds had shipped to Gilbert at the direction of Abrams usable parts to assemble only 2,720 units. Many items shipped by Reynolds during that month were returned as defective and unusable. After a conference between Reynolds, Gilbert and Abrams there was improvement in the condition of the units. Between October 31, 1945, and November 21, 1945, Reynolds shipped additional parts sufficient to assemble 9,087 units. From these parts Gilbert assembled and shipped 7,554 units for which Abrams paid him thirty-five cents per unit and forty-five cents per unit for 1,820 units shipped after December 4, 1945.

In November, 1945, Abrams went to the plant of Reynolds in Springfield to expedite deliveries. He learned there that "the government had declared . . . [Reynolds's] building to be surplus and was going to sell it." He was told that Reynolds could do no more work for him but that it would ship to him whatever parts it had on hand and return his molds or plates to him on November 16, 1945.

The auditor found that, "[t]hereafter, the plaintiff made no determined effort to see any other foundry or to make any arrangements with any other foundry to complete his requirements, although he did approach one or possibly two other foundries with whom he was unable to make any workable agreement."

On December 4, 1945, Gilbert wrote to Abrams complaining of the extra cost to it in assembling the units because of defective condition of the parts furnished it by Reynolds and later it notified Abrams that it would do no more work on the "juicers." Abrams decided to try to assemble, pack and ship the "juicers" himself. After some discussion between Gilbert and Abrams, Gilbert refused to deliver to Abrams any of the parts it had received from Reynolds until it was paid for them. On March 19, 1946, Abrams paid Gilbert $1,336.41 to cover parts which Gilbert had delivered to him. Included in this payment were two items amounting to $500 for previous excess polishing, milling and sanding the parts. Abrams found his costs greatly

exceeded his sales prices and abandoned the project in September, 1946.

After analyzing the plaintiff's claim for losses the auditor found that the plaintiff was entitled to recover from the defendant the following sums of money, representing various categories of losses:

| | | |
|---|---:|---|
| Item 1 | $1,072.35 | for losses sustained by cancellation of orders, |
| Item 2 | 678.20 | for loss of use on folding boxes, |
| Item 3 | 266.00 | for loss of use on master cartons, |
| Item 4 | 640.00 | for loss on wooden bases, |
| Item 5 | 787.78 | for loss on account of advertising, |
| Item 6 | 1,139.55 | for loss on account of defective or unusable castings, |
| Item 7 | 1,336.41 | for adjustment of Gilbert claim, |
| | $5,920.29 | with interest at six per cent from June 11, 1947, being the date of the plaintiff's writ, to October 25, 1951, amounting to |
| | $1,555.06 | |
| | $7,475.35 | total. |

After a hearing on the motions for judgment, the judge found that the plaintiff was entitled to recover the items found by the auditor except items 5 and 7, which he disallowed. The total sum allowed by the judge amounted to $3,796.10, with interest as computed by the auditor from June 11, 1947, the date of the plaintiff's writ, to October 25, 1951, in the sum of $996.47, making a total of $4,792.57. Thereafter the judge found for the plaintiff and for the defendant (the plaintiff in set-off) in the amounts hereinbefore mentioned, and ordered that judgment be entered for the defendant as hereinbefore stated. G. L. c. 232, § 11.

The established principle of law upon which damages for breach of contract may be assessed is that the injured party shall be placed in the same position he would have been in if the contract had been performed, so far as the loss may be ascertained to have followed as a natural consequence of the breach and to have been within the contemplation of the parties as reasonable men as a probable result of the breach. *Hadley* v. *Baxendale,* 9 Exch. 341, 354–355. *John*

*Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21–22. *Associated Perfumers, Inc.* v. *Andelman,* 316 Mass. 176, 185. See Restatement: Contracts, §§ 329, 330. Damages may be awarded for a breach of contract for the net amount of the losses caused and gains prevented by the defendant's breach. Restatement: Contracts, § 329. *F. A. Bartlett Tree Expert Co.* v. *Hartney,* 308 Mass. 407, 412.

The auditor in effect found that Abrams did not reasonably expend $2,397.19 or $4.88 per unit in an effort to salvage defective parts by putting them together. On the finding this was not a proper effort to mitigate damages and Abrams cannot recover for these items.

The judge correctly disallowed $787.78 which the auditor had awarded to Abrams for advertising loss. The report does not establish sufficiently that this loss was caused by Reynolds's breach of contract or that the amount of it was more than "speculative."

With respect to the Gilbert claim the auditor's findings do not establish adequately that the adjustment made by Abrams with Gilbert was wholly caused by Reynolds's breach of contract rather than by Gilbert's lack of experience and other factors not clearly attributable to Reynolds to any specific extent. The judge correctly disallowed this item as not supported by what the auditor seems to have regarded as subsidiary findings.

The plaintiff complains in his brief of the failure of the auditor or the judge to allow damages sustained by the plaintiff by the alleged cancellation of an order from Artware Products Co. The auditor found, however, that "the defendant is not liable to the plaintiff for any profit that he may have lost as a result of any dealings he may have had with Artware Products Co." This finding is conclusive on this aspect of the case.

*Order for judgment affirmed.*