**HONEY DEW ASSOCIATES, INC. and Bowen Investment, Inc., Plaintiffs,**

v.

**M & K FOOD CORPORATION, Irwin Kay, and Adele Kay, Defendants.**

No. 98–175L.

United States District Court,
D. Rhode Island.

Jan. 31, 2000.

Charles D. Wick, Pearlman & Wick, Providence, RI, Scott I. Wolf, Jack Mikels & Associates, Boston, MA, for plaintiffs.

Irving Brodsky, Providence, RI, for defendants.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

After having spent nearly two years within the federal judicial system, this case is about to be concluded at last, at this level. This Court is now prepared to render a decision following a bench trial and the filing of post trial briefs by the parties. On April 14 and 15, 1999, this Court heard evidence on the question of damages, after having granted partial summary judgment to plaintiffs on the question of liability for breach of a franchise agreement entered into between plaintiffs, Honey Dew Associates, Inc. ("Honey Dew") and Bowen Investment, Inc. ("Bowen"), and defendants, M & K Food Corporation ("M & K") and Irwin and Adele Kay. Plaintiff Bowen seeks damages and counsel fees pursuant to a damages clause in the aforementioned franchise agreement and both plaintiffs seek a permanent injunction to prevent defendants from using the Honey Dew trademarks and trade dress. For the reasons set forth below, this Court grants plaintiffs' request for a permanent injunction, but refuses to enforce the damages clause in the franchise agreement and, thus, awards only nominal damages to Bowen.

## I. Standard for Decision in Bench Trials

Pursuant to Federal Rule of Civil Procedure 52(a), this Court may enter judgment following a trial without a jury. *See* Fed. R.Civ.P. 52(a). In crafting a decision following a bench trial, the Court "shall find the facts specially and state separately its conclusions of law thereon." *Id.* It is within the purview of the trial court to weigh the credibility of witnesses for the purpose of making findings of fact. *See id.* The following findings of fact are based upon the evidence relevant to damages presented during the trial conducted before this Court without a jury.

## II. Findings of Fact

On June 9, 1992, plaintiff Bowen (based in Massachusetts), as a sub-franchisor of plaintiff Honey Dew (based in New Hampshire), entered into a Franchise Agreement and a Supplemental Agreement with M & K. Defendants Irwin and Adele Kay signed as guarantors. The Franchise Agreement was for a term of ten years, i.e. until June 8, 2002. Under the terms of the Franchise Agreement, Bowen, as the franchisor, licensed M & K, as the franchisee, to operate a retail donut shop in Providence, Rhode Island, and to use the service marks, trade dress and name of "Honey Dew" in the operation of the donut shop.

M & K entered into a lease with a third-party lessor, for the premises where the donut shop would be operated. That lease, dated November 14, 1991, was for a period of 12 years. Defendants also took out a substantial loan to build a structure according to Honey Dew specifications on the leased premises to house the donut shop. Defendants then proceeded to operate that shop (a mom, pop and son operation) in the Washington Park section of Providence.

Unfortunately, by November 9, 1997, the Kays, as a result of personal financial difficulties (Mr. Kay became seriously ill without adequate health insurance), became seriously delinquent in the payment of the franchise royalties and service fees due to Bowen pursuant to the Franchise Agreement.

On or about February 5, 1998, pursuant to the Franchise Agreement, Bowen forwarded to defendants a Notice of Default, indicating that M & K was in violation of the Franchise Agreement for failing to pay royalties and service fees. Defendants failed to cure the defaults within the time period specified in the Notice of Default. Thereafter, on or about March 2, 1998, pursuant to the Franchise Agreement, Bowen forwarded to defendants a Notice of Termination. The Notice of Termination, among other things, revoked M & K's license to operate a Honey Dew donut shop. The termination provisions of the Franchise Agreement provided that upon termination, M & K had to discontinue the use of Honey Dew trademarks and trade dress, and pay damages to Bowen in the form of all royalty payments which would become due on an accelerated basis plus counsel fees.

After receiving the Notice of Termination, M & K continued to operate the Honey Dew donut shop but failed to make any payments to Bowen for future royalties and service fees. Defendants, however, brought the franchise payments up to date to the time of termination. This lawsuit was filed shortly thereafter.

At the bench trial on damages, plaintiffs presented evidence of M & K's average weekly royalties for 1997. According to the damages clause in the Supplemental Agreement, in the event of default and termination, M & K was obligated to pay to Bowen all future royalties through to the contemplated expiration date of the agreement. The damages clause stipulated that future royalties were to be determined by the average weekly royalties for the year preceding the termination. The average weekly royalties payed to Bowen by M & K in 1997 amounted to $302.19. By using the week ending March

22, 1998 as the termination date, Bowen multiplied the average weekly royalties by the number of weeks remaining in the Franchise Agreement to arrive at $66,742.91 as the claimed amount of damages. In addition, plaintiffs offered pages of evidence and numerous affidavits to establish the amount of attorneys' fees payable for the labors of Massachusetts and local counsel on the case. The resultant figure was $44,414.80. Bowen did not offer any other evidence pertaining to the damages suffered by it as a result of the defendants' breach of the franchise agreement and consequent termination thereof.

### III.   Travel of the Case

Plaintiffs filed a four count Complaint alleging defendants' breach of the Franchise Agreement in this Court on March 30, 1998. In Count I, plaintiffs sought to enjoin defendants from using any of the Honey Dew trademarks and trade dress. In Count II, plaintiffs prayed for enforcement of certain restrictive covenants in the agreement, including a provision of the Franchise Agreement which provided that upon termination, M & K would not use the franchised premises as a donut shop. In Count III plaintiffs asked for enforcement of a non-competition provision. Finally, in Count IV Bowen claimed damages and counsel fees pursuant to paragraph 2 of the Supplemental Agreement which provided that upon termination of the Franchise Agreement, defendants would pay royalties for the remainder of the specified term of the Franchise Agreement.

After some initial pre-trial jousting, this Court heard testimony at a preliminary injunction hearing on January 28, 1999. At the preliminary injunction hearing, it was established that the defendants expended a sum of over $240,000 in establishing this retail donut shop business, and that the weekly franchise fees owed by M & K to Bowen varied between $300.00 to $325.00.

After several days of testimony at that hearing, this Court found that defendants failed to make timely franchise fee payments as prescribed by the franchise agreement, and, thus, were in breach, which justified the termination. The Court preliminarily enjoined the defendants from using any of the Honey Dew trademarks and trade dress. The Court refused to enforce the non-competition provision of the agreement or to oust defendants from the premises so that plaintiffs could make a new deal with the landlord to operate a Honey Dew shop at that location.

In compliance with the Order as entered by the Court on February 22, 1999, defendants ceased use of the Honey Dew trade marks and trade dress, made peace with the landlord (they were delinquent on rent payments as well) and continued operation of a generic donut shop on the site of the leased premises.

Later, this Court granted the plaintiffs' motion for partial summary judgment as to liability on Counts I and IV of the Complaint. This writer made it clear that the restrictive covenants which plaintiffs sought to enforce in Counts II and III of the Complaint were unconscionable. Thereafter, plaintiffs voluntarily dismissed Counts II and III. There is no dispute that the preliminary injunction entered by this Court on February 22, 1999 should become permanent. Thus, the only issues that are disputed relate to damages. Plaintiff Bowen seeks damages in the form of the future royalties which would have been paid by defendants to the expiration of the franchise agreement plus counsel fees all as provided in the damages clause.

The primary issue which this Court must address in this case is whether the damages clause in the Supplemental Agreement is enforceable.

### IV.   Conclusions of Law

### A.   Choice of Law Provision

The Supplemental Agreement signed by the parties contained a choice of law provision. The parties agreed to utilize Massa-

chusetts law when issues arose relating to the Franchise Agreement and the Supplemental Agreement. This choice of law issue was only tangentially addressed by counsel. Rhode Island has not explicitly decided whether contract cases will be governed by a "lex loci contractus" or an "interest-weighing" analysis. *See Crellin Technologies v. Equipmentlease Corp.*, 18 F.3d 1, 5 (1st Cir.1994) (collecting state cases); *URI Cogeneration Partners, L.P. v. Board of Governors For Higher Education*, 915 F.Supp. 1267, 1279–80 (D.R.I. 1996). It is not necessary for this Court to go through the analysis of these principles in order to uphold the choice of law provision in the agreement.[1]

As this Court has stated many times, under the established law of Rhode Island, a choice of law provision in a contract is enforceable where the transaction bears a reasonable relationship both to Rhode Island and another state: "[W]hen a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." R.I.Gen.Laws § 6A–1–105 (1992); *see also Providence & Worcester R.R. Co. v. Sargent & Greenleaf, Inc.*, 802 F.Supp. 680, 687 (D.R.I.1992). There is a reasonable relationship between the transaction at issue in this case and Massachusetts. The Commonwealth is both Bowen's principal place of business, and the contract was executed there. Although there is no significant difference between the law of Rhode Island and Massachusetts on the subject of liquidated damages, the Court will apply the law of Massachusetts in determining the validity of the damages provision at issue in the Supplemental Agreement.

**B. Validity of Damages Clause**

It is clear that Bowen's claim for damages hinges upon whether the damages clause in the Supplemental Agreement is enforceable under Massachusetts law. The damages clause provides as follows:

" Upon termination of this contract by Franchisor for default of the Franchisee, the Franchisee shall continue to be liable to the Franchisor for all royalty and other payments which, but for the termination, would have been due through the intended expiration of this Agreement. Franchisor's weekly damages for lost royalties shall be calculated as the average of the royalties due for the calendar year ending prior to termination. Franchisee shall also be liable for all costs resulting from its default and all costs of collection including reasonable counsel fees."

§ 2 of Supplemental Agreement. This clause is obviously an acceleration clause for liquidated damages. Although it does not specify an exact amount recoverable in the event of default, it essentially specifies that the amount remaining due under the Franchise Agreement is to be the measure of recoverable damages. *See* 22 Am.Jur.2d *Damages* § 712 (1988). Consequently, this Court must examine Massachusetts law with respect to the enforceability of liquidated damages and acceleration clauses. As would be expected, the law and analyses applicable to these two types of clauses is very similar.

*Kelly v. Marx*, 428 Mass. 877, 705 N.E.2d 1114 (1999) is the most recent Massachusetts case outlining the test for determining whether a court should uphold a liquidated damages provision. The issue in *Marx* was whether the Court, in determining if a liquidated damages clause in a real estate purchase and sale agreement was a reasonable estimate of damages, should look at the situation as of the time the agreement was made or as of the time of the breach. In rejecting the so-called "second-look" doctrine, the *Marx* Court stated that a liquidated damages clause is

---

1. For a synopsis of both the "lex loci contractus" and "interest-weighing" analysis *see Nor-* *tek, Inc. v. Molnar*, 36 F.Supp2d. 63, 66–67 (D.R.I.1999).

enforceable where, at the time the agreement was made, potential damages were difficult to ascertain and the clause contained a reasonable forecast of the damages expected to result from breach, regardless of whether the parties suffered actual damages from the breach. *See Marx*, 428 Mass. at 881–882, 705 N.E.2d 1114.

■ It is obvious that Massachusetts has accepted the venerable principle that where a liquidated damages clause is disproportionate to the anticipated loss and shocks the conscience of the court, such clause will be deemed an unenforceable penalty because it punishes for breach rather than compensates for loss. *See Space Master Int'l, Inc. v. City of Worcester*, 940 F.2d 16, 17 (1st Cir.1991) (applying Massachusetts law) (citing *Restatement (Second) of Contracts* § 356(1) (1979)); *Milford Power Ltd. Partnership by Milford Power Associates, Inc. v. New England Power Co.*, 918 F.Supp. 471, 484 (D.Mass.1996) (applying Massachusetts law); *In re D. Federico Co., Inc.*, 25 B.R. 822, 832 (Bankr.D.Mass.1982) (applying Massachusetts law), *aff'd*, 723 F.2d 122 (1983). *See generally* Paul H. Gantt and Ruth C. Breslauer, *Liquidated Damages vs. Penalties*, 47 B.U.L.Rev. 71 (1967) and L.S.T., Annotation, *Liquidated Damages or Penalties*, 104 A.L.R. 223 (1936). While it is true that considerable deference is given to the parties' reasonable determination of liquidated damages, the Court has discretion in determining whether a particular liquidated damages clause is unconscionable. *See* Mass.Gen.Laws ch. 106, §§ 2–302(1), 2–302 comment (1999). This determination must be made on a case-by-case basis, with particular attention given to the attendant circumstances. Even though Article 2 of the Uniform Commercial Code ("U.C.C.") applies only to sales of goods, the legislative statements of policy contained therein concerning good faith and unconscionability are fairly applicable to all aspects of a franchise agreement by analogy. *See Zapatha v. Dairy Mart,*

*Inc.*, 381 Mass. 284, 291, 408 N.E.2d 1370 (1980) (stating that "[t]his basic common law approach, applied to statutory statements of policy, permits a selective application of those principles expressed in a statute that reasonably should govern situations to which the statute does not apply explicitly").

■ In this case, the damages clause is an unenforceable penalty because, at the time the agreement was made, it was not a reasonable estimation of the potential loss which would occur if there was breach and termination of the Franchise Agreement. Under the terms of the Franchise Agreement, royalties were to be paid to plaintiffs on a monthly basis to June 8, 2002. It was known at the time of contracting that if M & K defaulted under the terms of the Franchise Agreement and it was terminated, the loss sustained by Bowen would be some small unknown amount every month through to the expiration date of the agreement. To require M & K to make all of those future payments in one lump sum as of the time of termination cannot reasonably be viewed as compensation for Bowen's loss, but rather as a penalty for the breach since there is no provision for discounting the amount to present value. Consequently, the damages clause calls for the payment of an unconscionable penalty. That is especially clear in this case because termination occurred when there was a significant term remaining under the agreement.

An examination of the relevant law concerning the validity of acceleration clauses leads to the same conclusion. If the damages clause is viewed simply as an acceleration clause, then the question becomes whether it calls for the payment of a penalty or is an appropriate liquidated damages clause. *See Perfect Solutions, Inc. v. Jereod, Inc.*, 974 F.Supp. 77, 82–84 (D.Mass.1997) (applying Massachusetts law) (denying summary judgment for plaintiff because the damages clause appeared to be a penalty since the sum of money to be paid was disproportionate to

actual damages actually arising out of breach); *see also Litton Industries Credit Corp. v. Catanuto,* 175 Conn. 69, 74–76, 394 A.2d 191 (1978) (applying New York law). The law regarding acceleration clauses is clear. When an acceleration clause is used outside the context of a mortgage or security agreement, as is the case here, the clause is considered a penalty if the actual damages could be easily ascertained or if the balance remaining unpaid would be out of proportion to actual damages suffered. *See* 22 Am.Jur.2d § 712 (1988).

Under Massachusetts law, acceleration clauses have been uniformly upheld where they are included in a promissory note, tied into either a mortgage or a security agreement. *See Goldman v. Peterson,* 1997 WL 724662 at *3 (Mass.App.Div.) (citing *A–Z Servicenter, Inc. v. Segall,* 334 Mass. 672, 676, 138 N.E.2d 266 (1956)). Unfortunately, the case law on this issue outside the context of mortgages or security agreements is sparse in Massachusetts. Nevertheless, it is well settled law that other than in a mortgage or security agreement situation, "an acceleration clause cannot be viewed as one for liquidated damages if the full amount owing cannot be an estimate of the true extent of damages sustained upon the breach, because the breach also relieved the plaintiff of further obligations under the contract." 22 Am.Jur.2d § 712 (1988).

In this case, Bowen was relieved of its duties under the Franchise Agreement as a consequence of M & K's default and termination. Common sense dictates that Bowen will save an unstated amount because it does not have to supervise the operation of the shop and regularly send personnel to Rhode Island to ensure that M & K complies with the Franchise Agreement (for example, the sanitary standards set forth in Honey Dew's policies). Additionally, plaintiffs will no longer be bound to provide services and support for M & K as required by the Franchise Agreement. Therefore, the damages clause which calls for an acceleration of future royalty payments is an unenforceable penalty since it is not a true estimate of the damages. In short, if the damages clause is enforced it allows Bowen to receive a windfall.

Since the damages clause calls for the imposition of a penalty it is unenforceable. Plaintiff Bowen must, therefore, prove its actual losses flowing from the breach. Bowen has failed to present any evidence on that point. By assuming that the damages clause was enforceable, Bowen has put all its eggs in that basket. The well accepted measure of damages in contract cases is that the injured party should be placed in the same position as it would have been in if the contract had been performed and loss suffered must flow as a natural consequence of the breach and have been within the contemplation of the parties as a result of the breach. *Abrams v. Reynolds Metals Co.,* 340 Mass. 704, 708, 166 N.E.2d 204 (1960); *see also International Totalizing Sys. Inc. v. PepsiCo, Inc.,* 29 Mass.App.Ct. 424, 430, 560 N.E.2d 749, *review denied,* 408 Mass. 1105, 563 N.E.2d 692 (1990). When there is an absence of proof of actual damages, a plaintiff, at most, is entitled to only nominal damages for breach of contract. *See Newton Constr. Co. v. West & South Water Supply District of Acton,* 326 Mass. 171, 175–176, 93 N.E.2d 457 (1950). Consequently, plaintiff Bowen is only entitled to an award of nominal damages of $1 in its favor for defendants' breach of the Franchise Agreement and the resulting termination.

Finally, this Court does not need to dissect Bowen's claim for counsel fees. Its claim for counsel fees is based solely on the last sentence of the damages clause. Since this Court has declared that clause unenforceable and the counsel fee provision is an integral part thereof, counsel fees are not recoverable in this case. *See* 5 *Corbin on Contracts* § 24.27 (revised ed.1998).

**CONCLUSION**

Plaintiffs Honey Dew and Bowen are entitled to a permanent injunction, preventing defendants from using the trademarks, service marks or trade dress of Honey Dew, as ordered by this Court on February 22, 1999 on a preliminary basis on Count I of the Complaint. Plaintiff Bowen is entitled to an award of $1 nominal damages on Count IV of the Complaint. The Clerk shall enter judgment to that effect forthwith.

It is so ordered.